[Civ. No. 7687. First Appellate District, Division One.—June 26, 1931.]

A. C. THORPE, Appellant, v. LOS ANGELES GAS AND ELECTRIC CORPORATION (a Corporation), Respondent.

D. A. Stuart and Edward A. Stuart for Appellant.

Paul Overton, S. W. Guthrie, Samuel Poorman, Jr., and Douglas Van Dyke for Respondent.

MURPHEY, J., *pro tem.*—This is an appeal by plaintiff upon the judgment-roll, from a judgment in his favor for $653 and interest and costs. The controversy arises over the construction of a written contract for the purchase by defendant from plaintiff of certain parcels of real property, and the sole question for determination is whether or not in reckoning and determining the total purchase price at the rate per acre stipulated in the contract, the area of the public street known as Old South Street whereon certain of said parcels abutted should be included. The trial court in the making of the award to the plaintiff excluded such area and rendered a judgment accordingly.

The contract by way of recital states: 1. The defendant "is desirous of acquiring title to a strip of land one hundred ten (110) feet in width over and across said Carlton Tract, said strip being that portion of said tract (and including the present South Street) lying between the southerly line of the present right of way of Pacific Electric Railway and a line 110 feet southerly from . . . said southerly right of way line, and being parallel therewith; and all that portion of Texas, Maryland and Virginia Streets within said strip. . . . ". 2. That "it is the desire of both parties" that defendant "shall acquire such land as may be owned by plaintiff and included within said strip, together with certain other lands hereinafter specified . . . ". 3. Defendant agrees to pay therefor "at the rate of Three Thousand Five Hundred ($3500) dollars per acre as hereinafter pro-

vided . . . ''. 4. Plaintiff agrees to convey within thirty days ''all of said lands described in paragraph 'First' hereof . . . '. Defendant shall pay to plaintiff ''at the rate of Three Thousand Five Hundred ($3500) dollars per acre for all of the land described in paragraph 'First' hereof, to which it can secure satisfactory title, as aforesaid, . . . also to pay at the rate of $3500 per acre for all contained in portion of Tex., Md. and Vir. Sts. in said strip when vacated and satisfactory title derived through'' plaintiff, which said description does not include any reference to the South Street area above mentioned.

After enumerating certain provisions not here involved, the contracts continue: 4. Defendant shall endeavor to purchase certain parcels owned by said parties and agree for a stipulated price to convey to plaintiff all such parcels as are not included in the 110-foot strip. 5. Defendant ''agrees to endeavor to secure the vacation of and legal title to old South Street in Carlton tract, from the easterly line of Texas Avenue to the westerly line of Michigan Avenue and will, if required so to do as a condition precedent thereto, dedicate . . . in lieu thereof, a new South Street forty (40) feet in width between said easterly line of Texas avenue and the southerly boundary line of said Carlton Tract . . . adjacent to, the southerly line of the one hundred ten (110) foot strip . . . '' 6. Plaintiff agrees to execute all instruments required ''to secure the vacation of South Street, that portion of Texas, Maryland and the 40 ft. between Blocks 36 and 37,–Virginia St. as herein provided for, and not to oppose . . . such vacation, and, as may thereafter be necessary, to secure to'' defendant title satisfactory to it to said 110-foot strip at $3,500 per acre ''as herein provided''. In this section the words ''Texas, Maryland and Virginia Streets'' were interlined and found by the trial court that such interlineations were made before the signing.

It will be observed that there is no specific provision for the payment of the area in Old South Street unless it is contained in paragraph 6 that is, there is a specific provision for payment at an agreed price for all the area contained in Texas, Maryland and Virginia Streets when vacated. ■ The sole question then to be determined is whether the area embraced in Old South Street should be included in determining the gross purchase price to be paid plaintiff, The

court determined this adversely to the plaintiff and the correctness of this conclusion is the sole question in issue. The appellant contends, first, that it is unfair and unreasonable, and second, that the words in paragraph 6 should be given their usual and ordinary sense and meaning, which it contends was not done by the trial court, and that provision had been made for all parts of lots, streets and alleys except South Street area, and that if it was not the intention to pay for that area, there was no reason to refer in paragraph 6 to the acre purchase price figure at all; third, that any uncertainty, if such exists, should be most strongly construed against the promisor.

It is our opinion that these contentions are fully disposed of both in law and logic and that the determination of the trial court is correct. The weight of authorities sustains the position that where land is described by lot number and recorded maps, if purchased at a stipulated rate per acre fronting or abutting on a street, the gross price is to be reckoned on the area of the lots exclusive of the street.

In the case of *Earl* v. *Dutour*, 181 Cal. 58 [6 A. L. R. 1163, 183 Pac. 438], the plaintiff had a decree quieting his title to a strip of land 15 feet wide adjacent to the center line of lot 17 of the Hilliard tract of which lot plaintiff and defendant owned respectively the easterly and westerly half. The question in dispute was whether the center line of the lot formed the eastern or western boundary line of the strip of land in suit, its solution depending upon the construction to be placed upon the word "lot" in the deed by which was conveyed to defendant the westerly one-half of lot 17 of the Hilliard tract as per map recorded. The map indicated that the western boundary of lot 17 was the center line of an avenue 60 feet in width. Plaintiff successfully contended in the trial court that the 30-foot strip covered by the avenue was part of the lot within the meaning of the deed and that therefore the eastern boundary of defendant's line was a line halfway between the center line of the avenue and the eastern boundary of lot 17. The Supreme Court rejected this contention, saying: "However clearly it may appear that the owner of a lot holds title to the center of an adjoining street, subject to the public easement, and that the boundary of the lot is technically, therefore, the

center of the street, in view of the fact that the owner of such lot or land has no right to the possession or occupancy of any portion of such public street, we are of the opinion that the word 'lot' as generally and customarily used, does not include such portion of the street. (*Wegge* v. *Madler,* 129 Wis. 412 [116 Am. St. Rep. 953, 109 N. W. 223].) As stated by the supreme court of Indiana, 'Lot and street are two separate and distinct terms, and have separate and distinct meanings. The term "lots" in its common and ordinary meaning, includes that portion of the platted territory measured and set apart for individual and private use and occupancy. While the term "streets" means that portion set apart and designated for the use of the public, and such is the sense in which such terms will be presumed to have been used, unless it be made to appear that a contrary meaning was intended.' . . . In the absence, therefore, of any circumstance indicating that a more unusual and technical meaning of the word 'lot' was contemplated and intended by the grantor, it will be presumed that the grant of a fractional part or of a given number of feet of a certain lot or parcel of land conveys the given fractional part or number of feet of that portion of the lot or parcel of land which is set apart for private use and occupancy."

In *Joens* v. *Baumbach,* 193 Cal. 567 [226 Pac. 400, 401], the court says: " . . . When a grantor describes his land, as was done in this case, as fronting on the county road, and running 'thence northerly . . . (900) feet,' it will be presumed that the grant conveys the given number of feet of land which is set apart for private use and occupancy."

In 4 Cal. Jur. 379, in discussing the presumption declared by section 831 of the Civil Code that "An owner of land bounded by a road or street is presumed to own the center of the way but the contrary may be shown," and the rule (Civ. Code, sec. 1112) that if land be described in a conveyance as so bounded, the line is presumed to be the center of the street or road, unless a contrary intention appears, it is said: "If lots are sold by number, and not by metes and bounds, reference being made to a registered map and plat, the conveyance carries title to the center of the street. . . . And in conveying a certain quantity of land in a block, the quantity is not measured from the center line of the street; it is measured exclusive of the street."

The only case in which the principle here involved is reflected in the actual gross purchase price paid is in *Pratt* v. *Law,* 9 Cranch (U. S.), 456, 490 [3 L. Ed. 791, see, also, Rose's U. S. Notes]. In that case where a large area of land was purchased at five cents per square foot which land had been divided into squares and lots, it was contended that in computing the areas the lots were not chargeable for their proportion of the internal alley in the square in which they were situated, laid out for the common benefit of those lots. In sustaining this contention the court adverts to the circumstance that under the president's instructions, there was reason to think that these alleys were rights of way appurtenant to the lots of each square respectively and then proceeds: "If this claim of Law's [the purchaser] extended to the alleys in those squares, of which the whole was conveyed to him, there would be some ground for disputing it. But as it is confined to those squares only in which the right could not be merged, because some one or more of the lots were the property of another, we think, the allowance ought to be made; for Law certainly has not acquired a title in fee simple in those alleys."

The law as indicated by the authorities hereinabove stated has to do with determining the area embraced in real estate transactions involving land abutting upon public streets or highways and is persuasive argument in support of the conclusion of the trial court that the plaintiff should not be paid, except upon conclusive evidence that the parties so intended, for the land to which he had no right of use or occupancy in any other degree or manner than is accorded to the public generally. Such being the law with respect to an area of land abutting upon a public street, it was incumbent upon plaintiff in contracting for payment for the area embraced within Old South Street to have his contract, to that effect, worded in such unmistakable terms as to foreclose any doubt on that question, in the place of which we have a contract that by its terms industriously negatives that purpose. The other street areas are specifically included in the paragraphs enumerating the property to be purchased and paid for in which South Street is, as we take it, significantly unnamed. In paragraph 6, after outlining the duties of the parties with respect to the abandonment of street areas, the section concludes with the statement: "To secure

to defendant title satisfactory to it to said 110-foot strip at $3500 per acre as herein provided." This is not a promise to pay for South Street, but is merely a recital of matters determined in the preceding paragraph of the agreement as to payments. The words "as herein provided" are indicative of that understanding by the parties to the contract. There is no price fixed in paragraph 6; the price-fixing having been accomplished in the preceding paragraph wherein no mention is made of South Street.

So far as the contract itself is concerned, there is nothing unfair or unreasonable in the construction placed upon the contract by the court. By the terms of the contract the defendant was obliged to supply a 40-foot street in the place and stead of Old South Street, and he did so, and this circumstance is not without significance. In differentiating in the manner of payment between Old South Street and Texas, Maryland and Virginia Streets, the parties no doubt took into consideration that with respect to Texas, Maryland and Virginia Streets, there was no compensation by way of substitution of other streets.

From the foregoing we are satisfied that the construction placed upon the contract by the court is correct, and the judgment is therefore affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 25, 1931.