[Civ. No. 8236. First Appellate District, Division Two.—February 10, 1932.]

In the Matter of the Application of WILLIS DIXON et al., MORTON A. MILLER et al., Respondents; ROBERT JONES, Appellant.

Muhleman, Anderson & Palmer and Alvan M. Palmer for Appellant.

James W. Bell for Respondents.

JAMISON, J., *pro tem.*—This appeal is from a judgment in favor of respondents upon a petition to have certain lands, alleged to be owned by them, registered under the Land Registration Act commonly known as the Torrens Act.

The land sought to be registered by respondents is the north half of lot 67, and a portion of lot 78, San Gabriel Boulevard, Los Angeles County, California, as per map recorded in book 54, pages 71 and 72, miscellaneous records of said county. The only part thereof that is involved in this appeal is a strip 15 feet wide extending east and west across the south end of the north half of lot 67.

Respondents claim to be the owners of said strip by title in fee simple and by adverse possession. They purchased the north half of said lot 67 from one Beck and wife on May 10, 1920. According to the map said lot 67 contains 10.43 acres. John T. Morgan was the owner of the south half of said lot and on September 30, 1919, he sold the north two acres of the south five acres of said lot 67 to appellant, as per map recorded in book 54, pages 71 and 72, miscellaneous records of Los Angeles County.

Respondents took possession of the said tract immediately upon its purchase, and appellant took possession of his two acres in October, 1919. On June 15, 1928, the court made an order appointing Arthur P. Wills, land referee, to take testimony and report his findings to the court. Thereafter the said referee took testimony and reported his findings to the court, and upon the filing of this report, the matter was referred back to the referee for a more specific report as to the payment of taxes, and upon the filing of this supplementary report the findings of the referee were adopted as the findings of the court.

Appellant contends that the findings are not supported by the evidence, that neither the finding that respondents are owners of the said strip of land by virtue of the description contained in the deed to them from Beck and wife, nor the

finding that they have title to said strip by adverse possession is supported by the evidence.

The width of said lot 67, from north to south, as measured to the center of Southern Avenue is 660.52 feet. The referee found that the south line of respondents' north half of lot 67 measured north from the center line of Southern Avenue, was 330.26 feet, Southern Avenue being 60 feet wide. Both the deeds to respondents and appellant are made with respect to the land conveyed to them in conformity to the recorded map aforesaid.

The finding of the referee with relation to this matter was as follows: "The recorded map in 54 M. R. to which reference is made in the petition, and which must be consulted in order to describe the properties, described in lot 67, as extending southerly and northerly 660.52 feet, and easterly and westerly 687.92 feet, and as containing 10.43 acres, and bears on its face this notation: 'all measurements made to center of streets'. A simple computation shows that in order that there may be 1043 acres in lot 67, the southerly border of said lot must be taken to be the center of Southern avenue (now known as Emerson place)."

Appellant claims that the south line of respondents' north half of lot 67 should be fixed by measuring from the north line of Southern Avenue. This measurement would give respondents 315.26 feet measured from south to north and to the owners of the south half of lot 67 the same. In the case of *Earl* v. *Dutour*, 181 Cal. 58 [6 A. L. R. 1163, 183 Pac. 438], the plaintiff had a decree quieting his title to a strip of land 15 feet wide adjacent to the center line of lot 17 of the Hilliard tract of which lot plaintiff and defendant owned respectively the easterly and westerly half. The question in dispute was whether the center line of the lot formed the eastern or western boundary line of the strip of land in suit, its solution depending upon the construction to be placed upon the word "lot" in the deed by which was conveyed to defendant the westerly one-half of lot 17 of the Hilliard tract, as per map recorded. The map indicated that the western boundary of lot 17 was the center line of an avenue 60 feet in width.

Plaintiff successfully contended in the trial court that the 30-foot strip covered by the avenue was part of the lot within the meaning of the deed and that therefore the eastern boundary of defendant's line was a line halfway

between the center line of the avenue and the eastern boundary of lot 17. The Supreme Court rejected this contention saying: "However clearly it may appear that the owner of a lot holds title to the center of an adjoining street, subject to the public easement, and that the boundary of the lot is technically, therefore, the center of the street, in view of the fact that the owner of such lot or land has no right to the possession or occupancy of any portion of such public street, we are of the opinion that the word 'lot', as generally and customarily used, does not include such portion of the street. As stated by the supreme court of Indiana, 'lot and street are two separate and distinct terms, and have separate and distinct meanings. The term "lots" in its common and ordinary meaning includes that portion of the platted territory measured and set apart for individual and private use and occupancy. While the term "streets" means that portion set apart and designated for the use of the public, and such is the sense in which such terms will be presumed to have been used, unless it be made to appear that a contrary meaning was intended.' (*Montgomery* v. *Hines*, 134 Ind. 221, 225 [33 N. E. 1100].) In the absence, therefore, of any circumstance indicating that a more unusual and technical meaning of the word 'lot' was contemplated and intended by the grantor, it will be presumed that the grant of a fractional part or a given number of feet of a certain lot, or parcel of land conveys the given fractional part or number of feet of that portion of the lot or parcel of land which is set apart for private use and occupancy." (*Thorpe* v. *Los Angeles Gas & Elec. Corp.*, 115 Cal. App. 201 [1 Pac. (2d) 37, 39].) In *Montgomery* v. *Hines, supra*, the court said, "The streets were dedicated to public use, and the adjacent lot-owners took title to the lots with the same, and no greater interest in the street than if the lots had been described in the plat as being the width they in fact were, independent of the street."

There is no evidence to the effect that the word "lot" was used in the aforesaid deeds otherwise than as it is generally and ordinarily used, therefore we are of the opinion that the deed from Beck and wife conveyed to respondents the north half of lot 67, measured from the northerly line of Southern Avenue. That is to say that the north half of lot 67 extends northerly and southerly 315.26 feet and easterly and westerly 687.92 feet.

One of the elements necessary to be proven in the establishment of title by adverse possession is the payment of all taxes, state, county and municipal that have been levied and assessed upon the land. (Sec. 325, Code Civ. Proc.)

In his first, or original report, the referee found the said strip of fifteen feet was included in the land deeded to respondents by Beck and wife and that they had paid all taxes levied and assessed against same. And in his second or supplementary report he found that respondents had not paid the taxes on the fifteen-foot strip, but did find that respondents did pay the taxes for the years 1920 to 1925, inclusive, on the property described as commencing 315.26 feet north from the north line of Southern Avenue, the north 315.26 feet.

L. E. Wallace was called as a witness on behalf of respondents. He testified that he was a deputy county surveyor; that he was familiar with tax records, including the assessment levies; that it was a part of the duties of the county surveyor to prepare maps for assessments.

"Q. That assessments during the five years just prior to March 6, 1928, have been made to the owners according to that north line of that street? (referring to the north line of Southern avenue).

"A. Yes.

"Referee. The measurements are from the north line in other words?

"A. Yes.

"Mr. Bell. Q. The center of the lot 67 would be 315.26 feet from that north line?

"A. Yes.

"Q. During that period then the taxes would be assessed to the owner claiming south of that 315.26-foot line and the owner claiming north of that?

"A. Yes.

"Q. There was no assessment outside of that?

"A. Not to my knowledge.

"Q. As far as the record shows there has been no other assessment?

"A. No.

"Q. Taxes have been paid according to that record description, have they?

"A. From the north line of Southern avenue."

The tax receipts for the five years preceding 1928 are not before us, but we gather from testimony of witness Wallace, that during those years taxes were assessed against the north 315.26 feet of lot 67 and also against the south 315.26 feet of said lot to the respective owners of the north half and south half of said lot measured from the north line of Southern Avenue. The width of lot 67 from north to south, exclusive of the 30 feet that formed part of Southern Avenue is 630.52 feet; it is therefore evident that the 315.26 feet assessed to respondents did not include the said strip of 15 feet, but on the contrary said strip was included in the 315.26 feet which constituted the south half of said lot 67.

 The burden of proving all the essential elements of an adverse possession or prescriptive title is upon the party relying upon it (1 Cal. Jur., p. 636, sec. 95; *San Francisco Credit C. House* v. *Wells,* 196 Cal. 701 [239 Pac. 319]), and he must prove that no taxes were levied or assessed against the land or that he has paid all taxes which were levied thereon. (*Allen* v. *Allen,* 159 Cal. 197 [113 Pac. 160]; *Gish* v. *Huckaby,* 38 Cal. App. 144 [175 Pac. 651].) Respondents proved that they had paid the taxes assessed against the north half of lot 67, but offered no proof as to who paid the taxes assessed against the south half of said lot.

As the said strip of 15 feet is included in the south half of said lot the burden rested upon respondents to prove that they had paid the taxes upon this strip. This burden they failed to sustain and consequently their claim of title to said strip by adverse possession cannot be sustained.

There is no evidence in this case that there was any agreement between the owners of the north half and the south half of lot 67 regarding the division line between said properties.

The judgment is reversed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 11, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 8, 1932.