Filed April 7, 1893.

---

No. 16,235.

## MONTGOMERY ET AL. *v.* HINES ET AL.

DESCRIPTION.—*Real Estate.*—*Lot Abutting on West Side of Street.*—*So Many Feet off East Side of Such Lot.*—*Reckon from Center of Street or West Boundary of Street.*—Where a lot was described as follows: "Commencing at the southeast corner of lot 5, thence north to the northeast corner, west 72 feet, south to the south line, and east to beginning," there being a street on the east side of said lot, the land conveyed was a strip 72 feet wide off the east side of said lot, extending west from the west boundary of said street, and not from the center of the street.

SAME.—*Lots and Streets.*—*When Lot-Owner Takes to Center of Street.*—*Description by Metes and Bounds.*—Where land is legally platted for town purposes, a lot must be understood to mean the land independently of the street, though the adjacent lot-owner, by the purchase of the lot or that portion adjacent to the street, takes title, ordinarily, to the center of the street, subject to the rights of the public; and he would take title to the center of the street, if, in describing the lot, or such part thereof, it were described by metes and bounds running to and along the street.

From the Hamilton Circuit Court.

*G. Shirts* and *I. A. Kilbourne,* for appellants.

*R. Graham, W. Fertig* and *H. J. Alexander,* for appellees.

OLDS, J.—This is an action by the appellants, against the appellees, to quiet the title to certain real estate. Appellees answered by general denial, and also filed a cross-complaint claiming title in themselves.

There was a trial resulting in a finding for the appellees on the issues joined on the complaint, and against them on their cross-complaint. .

The real estate in controversy is a part of lot 5 in G. H. Voss' addition to the town of Noblesville, in Hamilton county, Indiana. Appellants and appellees both claim title through one S. C. Montgomery, who owned the lot, with others, after the same was platted by Voss. The territory laid out and platted by Voss as an addition to the town included some thirty-five lots and a number of streets. The lots and streets were marked off on the plat, and the names of the streets, and the widths thereof, written in each street, and the numbers were marked on the lots, but the size of the lots is not marked on all of them. Among the number upon which the size is not marked are lots 4, 5 and 6.

In the certificate, or statement, attached to and describing the plat which is signed and acknowledged by Voss, it is stated that ''these lots are 8 by 20 poles, to the center of the street, except,'' etc. The exception is not material, as it relates to other lots.

Appellees claim through mesne conveyances from said Montgomery, in which conveyances the real estate is described as ''Commencing at the southeast corner of lot 5, thence north to the northeast corner, west 72 feet, south to the south line, and east to beginning,'' the purchasers, respectively, taking possession of a strip 72 feet wide off the east side of said lot 5—that is to say, the purchasers took possession of a strip off the east side of said lot extending back a distance of 72 feet west from the west line of Cockrun street, a street 40 feet wide, running north

and south on the east side of said lot, and bordering on the east line of said lot, said strip extending north and south across the lot. Some ten years after the conveyance by Montgomery of the portion of the lot above described, and after it had been reconveyed by the same description, Montgomery conveyed lots 4 and 5 in said addition, excepting 72 feet off the east side of lot 5, to other parties, who have reconveyed the same, and through whom appellants claim title.

The contention in this case, on behalf of the appellants, is that the description of 72 feet extended west only 72 feet from the center of Cockrun street, the center of the street being the east boundary. While the appellees contend that it extended back into the lot 72 feet from the west line of said street.

The particular error complained of is that the court erred in admitting certain testimony of Montgomery, the party through whom both appellants and appellees claim title, over the objection and exception of the appellants, which ruling of the court, in admitting the testimony, was made the basis of a motion for a new trial by the appellants. The motion for a new trial was overruled, exceptions reserved, and the ruling assigned as error.

Montgomery, while testifying as a witness, testified, that while he owned the whole of said lot 5, he built a partition fence across said lot from north to south; that he measured off and built the fence 72 feet from the fence along the west side of the street—Cockrun street—on the east of said lot. Witness was then asked if that was what he intended to convey, and appellants objected, not on the grounds of the form of the question, but on the grounds of its incompetency, as seeking to elicit incompetent testimony.

The objection was overruled, exceptions reserved by

appellants, and the witness answered: "Yes, sir; that is what I intended to convey."

The plat of the addition designated the lots and streets, stating the size of the lots and the width of the streets. In giving the size of the lots it did not deduct and give the size of the lots exclusive of the streets, but designated the width of the streets and the size of the lots, measuring from the center of the streets. This method of designating the size of the lots did not make the lot, or any portion of it, a street, nor any portion of the street a lot. The streets were named, and their width designated on the plat, and purchasers bought with knowledge of these facts, as to what portion of the territory platted was platted as streets, and what portion as lots. The streets were dedicated to the public use, and the adjacent lot-owners took title to the lots with the same, and no greater, interest in the street than if the lots had been described in the plat as being the width they in fact were, independent of the street; and if the lots had been designated as the size they were, independently of the portion designated as a street, certainly a strip so many feet off the side of the lot bordering on the street would carry it back the number of feet designated from the outside line of the street, and the same must be true in this case, though the method of designating the size of the lots was by giving the size measuring from the center of the street.

When land is regularly and legally platted for town purposes, and it is not contended that this was not so platted, and lots and streets marked off and described, giving width of street and size of lots, a lot, we think, must be understood to mean the land independently of the street, though the adjacent lot-owner, by the purchase of the lot, or that portion bordering on and

lying adjacent to the street, takes title ordinarily to the center of the street, subject to the rights of the public. This same title to the street he would take, if, in describing the lot, it were described by metes and bounds, running to and along the street. See Elliott's Roads and Streets, pp. 519 and 549, and authorities there cited.

Lot and street are two separate and distinct terms, and have separate and distinct meanings. The term "lots," in its common and ordinary meaning, includes that portion of the platted territory measured and set apart for individual and private use and occupancy. While the term "streets" means that portion set apart and designated for the use of the public, and such is the sense in which such terms will be presumed to have been used, unless it be made to appear that a contrary meaning was intended.

The conveyances in this case gave to the purchasers the legal title to 72 feet, bounded on the east by the east line of the lot (the west boundary line of the street), and extending back onto the lot 72 feet from that line. There was nothing in the conveyance to authorize any different construction. This is the common and usual meaning of the words used, and there is nothing to indicate that the words were used in any other sense.

This being true, the evidence as to the intention of the grantor was harmless, even if erroneous, for the conveyances passed the title the grantor testified he intended to convey, and the appellants were resting their right to recover on the language of the deeds, and did not seek to correct or change them if erroneous, and by them they are bound, as they were not seeking to change them. Though we do not hold or indicate an opinion that such testimony was inadmissible to establish a defense under the answer of denial, in view of the rule allowing all

defenses to be given under this answer in this class of cases, the admission of the evidence was harmless, if erroneous, hence we need not pass upon its competency.

There is no error in the record.

