JAMES ELDRIDGE SMITH ET AL. *v.* GOVERNMENT
REALTY, INC.
GOVERNMENT REALTY, INC., *v.* JAMES ELDRIDGE
SMITH ET AL.
[Nos. 34, 35, April Term, 1937.]

*Decided May 25th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, and SHEHAN, JJ.

*Paul M. Higinbothom* and *W. Giles Parker,* with whom was *Erwin I. Ulman* on the brief, for James Eldridge Smith and wife.

*Alfred J. O'Ferrall,* for Government Realty, Inc.

PARKE, J., delivered the opinion of the Court.

The complainants are the owners of an improved lot of land known as No. 4610 Garrison Boulevard, in that part of Baltimore City which is within the suburban development called West Arlington. The parcel is designated as lot No. 258 of section 14 of the plat of West Arlington as appears from the record of the plat in the land records of Baltimore County in Liber J. W. S. No. 147, folio 113. The lot binds on the southern boundary line of Belvieu Avenue at where it terminates in the western boundary line of Garrison Avenue, which runs north and south. Opposite this lot are the two lots of the defendant which lie in the intersection of the northern boundary line of Belvieu Avenue with the western street line of Garrison Avenue. These last lots have a frontage on Garrison Avenue of 100 feet and, with this uniform width, have a depth on Belvieu Avenue of 200 feet to an alley which runs parallel with Garrison Avenue. The two lots are known as lots Nos. 180, 181 on the plat, and each has a width of fifty feet on Garrison Avenue.

The plaintiffs and the defendant both derive their titles through a common source, which is the West Arlington Improvement Company of Baltimore City. The improvement company was the owner of a tract of land that it had divided and laid out into streets and ways and building lots, with the object of selling the lots subject to uniform conditions and building restrictions. The grants made by the improvement company contained by insertion or by reference these conditions and restrictions, which were quite numerous and are identical with reference to the lots owned by the parties here.

According to the testimony, the development has proceeded until about ninety per centum of the tract has been improved by detached cottages. The average lot has a frontage of fifty feet and a depth of one hundred and fifty feet. The usual width of a house is twenty-five to thirty feet. There are no stores nor commercial enterprises within the tract.

Under these conditions the pending controversy arose. The defendant proposes in effect to divide each of its two lots of fifty feet in width into two lots of a width of twenty-five feet, and, on each of the resulting four twenty-five feet wide lots, to erect one dwelling joined to another duplicate dwelling, so that the party wall of the two duplicate dwellings will be on the dividing line which separates each of the two original lots into two lots of twenty-five feet in width, but the outside walls of these duplicate dwellings, with a common party wall, will be at least five feet from the parallel eastern and western lines of the original two lots of fifty feet in width. In other words, a double house is to be built midway the width of each of two fifty feet wide lots, with the party wall of the double house coincident with a line dividing the lot into two parts of equal width, and with the side walls of each double house each five feet inside of the parallel side boundary lines of each of the two fifty feet wide lots.

The further proposed purpose of the defendant is to open a private alley way, to be fifteen feet wide and to extend across the two fifty feet lots from the north side of Belvieu Avenue parallel with and midway between Garrison Avenue and a parallel alley at the rear of the lots of the defendant.

On these facts the plaintiffs seek to have the defendant perpetually enjoined and restrained from erecting or causing to be erected the proposed buildings in accordance with building permits issued and as thereby authorized, and from subdividing the lots in any other manner than as they now exist. The cause was submitted, after the taking of proof, and the chancellor dismissed the bill

of complaint so far as it sought to enjoin the building of the houses, but directed the writ to issue against a subdivision of the lot which would reduce the depth of the lots. Cross-appeals were taken by the plaintiffs and the defendant from the decree.

1. The two restrictions on which the plaintiffs rely are these:

"2nd. That no portion of the dwelling house shall be nearer to the side lines of the lot than five feet. * * *

"4th. That one dwelling only shall be erected on each lot twenty-five feet wide, or two on a lot fifty feet wide."

The two lots of the defendant were fifty feet in width when originally laid out in the plan of development, and their boundaries remain the same. If the proposed structure be regarded as two dwellings because it is of semi-detached construction, or a pair of houses joined together by a party wall but detached from other buildings, the most that can be argued is that they are two dwellings on a lot fifty feet in width. The restrictions invoked explicitly permit two dwellings on lots of the width of those here involved, and, since no portion of these two dwelling houses are nearer to the side lines of the lot than five feet, their erection as contemplated is not in violation of the restrictions quoted.

The restrictions do not justify the construction that the owner of a lot of fifty feet in width in the development must conform to the restrictions which are applicable to a lot twenty-five feet wide, so that if he should erect two dwellings he is confined to two buildings which must not only be five feet away from the side lines of his lot of fifty feet, but shall be separated so that a minimum distance of ten feet shall separate the inner side walls or other side portions of one dwelling from those of the other dwelling. To adopt such a construction, it would be necessary for the court to write into the restrictions a further condition in the use and enjoyment of land which was neither expressed by the documents of title nor necessarily inferred from the terms employed. As was stated in *Sowers v. Holy Nativity Church,* 149

Md. 434, at page 442, 131 A. 785, 788: "The use of the lots will not be further incumbered, and their commercial utility and value affected, by raising, through unwarranted implication, restrictions which it is the sound policy of the law to require to be plainly and unmistakably declared through the language of the document, when considered in connection with the circumstances surrounding the transaction and the object of the parties at the time of the creation of the restrictions. *Hanilyn & Co. v. Wood & Co.* (1891) 2 Q. B. 488, at page 491; *Brigg v. Thornton* (1904) 1 Ch. 386, at page 395; *Saratoga Bldg. & Land Corp. v. Roland Park Apartment Stables Co.*, 146 Md. 152, 158, 128 A. 270; *Meredith v. Danzer*, 142 Md. 573, 582, 121 A. 245; *Wood v. Stehrer*, 119 Md. 143, 149, 86 A. 128."

The court is in accord with the decree of the chancellor on the ruling that the injunction should not issue to forbid the proposed building of the semi-detached houses.

2. The attention of the court has not been directed to any restriction which would in terms prevent the laying of the contemplated private alley or way over any portion of the defendant's lots. Neither is such a way a use of the lot which is inferentially denied by any restrictive provision. Nor would it mark a subdivision of the two lots over which it is to pass for the purpose of the evasion of any restriction imposed. The record does not disclose a sufficient ground for equitable interference, and, if one should hereafter arise, it may then be considered. For error in directing an injunction to be issued in respect of the laying down of the alley way, the decree will be reversed in part, and cause remanded for the dismissal of the bill of complaint.

> *Decree reversed in part and affirmed in part, and cause remanded for the passage of a decree dismissing the bill of complaint. The costs in Nos. 34 and 35 to be paid one-half by the plaintiffs and one-half by the defendant.*