[Civ. No. 6320. Third Appellate District.—February 14, 1940.]

A. W. PEAKE, Appellant, v. AZUSA VALLEY SAVINGS BANK (a Corporation), Respondent.

Charles J. O'Connor and Donald S. Gillespie for Appellant.

Tscharner & Miller for Respondent.

SCHOTTKY, J., *pro tem.*—In this action to quiet title the plaintiff appeals from a judgment in favor of defendant.

The action was instituted by appellant to quiet title to the westerly 110 feet of lots 3 and 4, block B, of subdivision No. 1, of the lands of Azusa Land and Water Company, as per map recorded in book 16, page 17, Miscellaneous Records of Los Angeles County.

He claims title to the westerly 110 feet of lots 3 and 4 by virtue of a deed executed by Frank L. Dingman and Nettie L. Dingman, his wife.

Appellant alleges in his second cause of action that prior to November 12, 1927, Frank L. Dingman and Nettie L. Dingman were the owners of all of lots 3 and 4 of the property in the above-described tract, which were planted to citrus fruits. On the 12th day of November, 1927, Frank L. Dingman and Nettie L. Dingman, husband and wife, duly executed a deed conveying to Herbert L. Thompson and Electa O. Thompson, husband and wife, as joint tenants, the last 660 feet of lots 3 and 4. It is also alleged that at the time of the execution of the last-mentioned deed the exact boundary line or survey line between said portion sold to

the Thompsons and that portion of said lots 3 and 4 retained by the Dingmans was not known, nor were there any marks or monument to distinguish the boundary line between the contiguous portions or parcels of real property; that thereupon said adjoining landowners fixed and agreed upon a true boundary line; that under the terms of this agreement it was agreed that the true boundary line was midway between the 6th and 7th row of citrus trees on the westerly portion of said lots 3 and 4; that in pursuance to this understanding the Dingmans had complete control and possession of said six rows of citrus trees continuously from 1927 up to the spring of 1935; that during said period of eight years they did all things necessary for the care and cultural development of said property, and during said period of time from the year 1927 until the spring of 1935 they marketed and sold all citrus products grown upon the westerly 110 feet of lots 3 and 4, above described, and received all of the proceeds therefrom.

Respondent denied ownership in appellant of any of the disputed land and further alleged that for a long time prior to the commencement of this action it was the owner of this property and had been in possession thereof. Respondent bases its claim to title of the westerly 110 feet of lots 3 and 4 on the fact that Herbert L. Thompson and Electa O. Thompson on or about the 21st day of October, 1928, executed and delivered their promissory note and mortgage to the Azusa Valley Savings Bank, covering the easterly 660 feet of lots 3 and 4. Thereafter on the 17th day of March, 1933, respondent foreclosed said mortgage and obtained a decree of foreclosure and order of sale, and the property was by virtue of said decree of foreclosure sold to the Azusa Valley Savings Bank.

The distance from the west boundary line of lots 3 and 4 to the west boundary line of Azusa Avenue is approximately 730 feet. Azusa Avenue abuts said lots 3 and 4 on the east. In 1935 the Azusa Valley Savings Bank demanded possession of the easterly 40 feet of the westerly 110 feet of lots 3 and 4. This claim was based upon the contention that inasmuch as the original deed to the Thompsons conveyed the easterly 660 feet, and as the property was bounded by a highway, to wit: Azusa Avenue on the east, said highway

being an 80-foot thoroughfare, and inasmuch as the easterly 40 feet of lots 3 and 4 had been dedicated for street purposes, that therefore the easterly boundary of the premises conveyed to the Thompsons and to which respondents subsequently purchased through foreclosure sale, was the westerly curb line of said Azusa Avenue.

On the issues thus formed, a trial was had, resulting in findings of fact and conclusions of law to the effect that appellant was the owner of the westerly 70 feet of lots 3 and 4 and that respondent herein was the owner of the east 40 feet of the westerly 110 feet of lots 3 and 4, said easterly 40 feet being included within the 660 feet conveyed to H. L. Thompson and Electa O. Thompson. Costs were granted to respondent.

Appellant unsuccessfully presented a motion for new trial and after denial thereof this appeal was taken.

Appellant contends that the evidence is insufficient to justify the decision, and that the decision is against law, and in his briefs urges five points as ground for the reversal of the judgment of the court below. These points are: 1. That by the terms of the original deed from the Dingmans to the Thompsons no part of the westerly 110 feet of lots 3 and 4 was conveyed; 2. Appellant is the owner of the westerly 110 feet by virtue of an express agreement between the Dingmans and Thompsons fixing the boundary between the adjoining parcels of real property; 3. The court failed to find on the material issue of whether an agreement could be implied from acts and conduct of the parties; 4. That said decision is against law by virtue of the doctrine of adverse possession; 5. The court was in error in refusing to grant costs to appellant. We shall discuss these points in the order of their statement.

1. Appellant contends that the decision of the court below that respondent is the owner of the east 40 feet of the westerly 110 feet of lots 3 and 4 is contrary to law, claiming that the original deed from the Dingmans to the Thompsons conveyed no part of the west 110 feet of said lots 3 and 4. Said deed described the property conveyed to the Thompsons as "the easterly 660 feet of lots 3 and 4 in Block B of Subdivision 1 of the Lands of Azusa Land & Water Company". The map of said tract shows that the easterly boundary of lots 3 and 4 was Azusa Avenue.

Appellant contends that the true easterly boundary of the property conveyed to the Thompsons was the center line of Azusa Avenue, and not the westerly line of said Azusa Avenue, while respondent contends that the westerly line of Azusa Avenue is the easterly boundary of the property conveyed to the Thompsons. Azusa Avenue, as has heretofore been stated, is a thoroughfare 80 feet wide. If the contention of appellant is correct, he is the owner of the westerly 110 feet of said lots 3 and 4; while if the contention of respondent is correct, appellant is the owner of only the westerly 70 feet of said lots 3 and 4.

In support of his contention as to this point, appellant cites section 1112 of the Civil Code and the case of *Anderson* v. *Citizens Savings & Trust Co.*, 185 Cal. 386 [197 Pac. 113].

Section 1112 of the Civil Code reads as follows:

"A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant."

The case of *Anderson* v. *Citizens Savings & Trust Co., supra,* at first blush would seem to sustain the contention of appellant, but the question before the court in that case was as stated in the opinion itself, namely: "Did or did not that deed describing the property as lot so and so in block so and so as shown by a certain map, operate to convey the land in front of the lot to the center of the streets shown on the map, although such streets had been abandoned as public streets?" Here the street along the property had not been abandoned.

In the case of *Earl* v. *Dutour*, 181 Cal. 58 [183 Pac. 438, 6 A. L. R. 1163], the plaintiff had a decree quieting his title to a strip of land 15 feet wide adjacent to the center line of lot 17 of the Hilliard tract, of which lot plaintiff and defendant owned respectively the easterly and westerly half. The question in dispute was whether the center line of the lot formed the boundary line of the strip of land in controversy, its solution depending upon the construction to be placed upon the word "lot" in the deed by which was conveyed to defendant the westerly one-half of lot 17 of the Hilliard tract. The map of Hilliard tract indicated that the westerly boundary of lot 17 was the center line of an avenue 60 feet in

width. Plaintiff successfully contended in the trial court that the 30-foot strip covered by the avenue was part of the lot within the meaning of the deed, and that therefore the eastern boundary of the defendant's line was a line halfway between the center line of the avenue and the eastern boundary of lot 17. The Supreme Court rejected this contention, saying:

"However clearly it may appear that the owner of a lot holds title to the center of an adjoining street, subject to the public easement, and that the boundary of the lot is technically, therefore, the center of the street, in view of the fact that the owner of such lot or land has no right to the possession or occupancy of any portion of such public street, we are of the opinion that the word 'lot', as generally and customarily used, does not include such portion of the street. (*Wegge* v. *Madler,* 129 Wis. 412 [116 Am. St. Rep. 953, 109 N. W. 223].) As stated by the Supreme Court of Indiana, 'Lot and street are two separate and distinct terms, and have separate and distinct meanings. The term 'lots' in its common and ordinary meaning, includes that portion of the platted territory measured and set apart for individual and private use and occupancy. While the term 'streets' means that portion set apart and designated for the use of the public, and such is the sense in which such terms will be presumed to have been used, unless it be made to appear that a contrary meaning was intended.' (*Montgomery* v. *Hines,* 134 Ind. 221, 225 [33 N. E. 1100].)

"In the absence, therefore, of any circumstance indicating that a more unusual and technical meaning of the word 'lot' was contemplated and intended by the grantor, it will be presumed that the grant of a fractional part or of a given number of feet of a certain lot or parcel of land conveys the given fractional part or number of feet of that portion of the lot or parcel of land which is set apart for private use and occupancy."

The case of *Earl* v. *Dutour, supra,* has been cited with approval in the following cases: *Joens* v. *Baumbach,* 193 Cal. 567 [226 Pac. 400]; *Hunter* v. *Roman Catholic Bishop, etc.,* 128 Cal. App. 90 [16 Pac. (2d) 1048]; *In re Dixon,* 120 Cal. App. 635 [8 Pac. (2d) 881]; *Ferris* v. *Emmons,* 214 Cal. 501 [6 Pac. (2d) 950].

Appellant points out that *Earl* v. *Dutour, supra,* merely states that the facts there existing create a rebuttable presumption and its applicability depends upon the particular facts of each separate case. This rule the trial court did apply and we believe its finding is abundantly sustained by the law and the evidence.

2. Appellant's second contention is that he is the owner of the westerly 110 feet by virtue of an express agreement between the Dingmans and the Thompsons, fixing the boundary line between the adjoining parcels of real property, and that the findings of the trial court that there never was an agreement fixing a boundary line between the adjoining parcels of real property is against law, and is contrary to the evidence. There is no doubt that the law is well settled that, where the boundary line between two adjoining owners is uncertain, they may agree upon a division line between them, which agreed line will then become the boundary line between their properties. In this case, however, there is a clear conflict in the evidence as to whether a boundary line was agreed upon, and we are bound by the finding of the trial court upon this issue.

3. We are unable to find any merit in appellant's third contention to the effect that "the court failed to make any finding on the material question presented by the evidence whether an agreement could be inferred from the acts of the parties", and that the "trial court was in error in failing to find on this material issue, and that the acts and conduct of the parties was sufficient to imply that an agreement had been made fixing a boundary."

An agreement for the establishing of a boundary line may be express or implied, and the finding of the court below that there never was an agreement entered into between the Thompsons and the Dingmans fixing a boundary line between their adjoining properties was a sufficiently broad finding upon the issue of whether or not any agreement had been made fixing a boundary.

4. Appellant's fourth point is that the decision of the court that respondent is the owner of the easterly 40 feet of the west 110 feet is against law and is contrary to the evidence by virtue of the doctrine of adverse possession.

The trial court found as follows upon the issue of adverse possession:

"14. During the period from November 12, 1937, to about the Spring of 1933, Frank L. Dingman did the necessary work for the preservation, care, upkeep, and cultural development including irrigating, fumigating, pruning, fertilizing, etc., of the East 660 feet as defined in Findings 12 and 13, but said work and labor on the part of said Frank L. Dingman was done and performed by him for and in behalf of said Herbert L. Thompson and Electa O. Thompson and as their employee, for which work and for his labor and expense in the doing of the same, the said Dingman sent bills to the said Thompsons which bills the said Thompsons paid to said Dingman, all without any knowledge on the part of said Thompsons that the said Frank L. Dingman and Nettie L. Dingman were claiming said premises or any part thereof, and more particularly, without knowledge by the Thompsons that the Dingmans were claiming the East 40 feet of the West 110 feet of said Lots 3 and 4 in Block B of Subdivision No. 1 of lands of Azusa Land & Water Company, adversely to the said Herbert L. Thompson and Electa O. Thompson.

"Neither the said Frank L. Dingman or Nettie L. Dingman or either nor any of them, ever performed any act or did any work on said East 40 feet of the West 110 feet of said Lots 3 and 4 which would indicate to said Herbert L. Thompson or Electa O. Thompson or to the general public that the Dingmans were claiming the East 40 feet to the said West 110 feet of Lots 3 and 4 adversely to the said Thompsons or any other person.

"15. Said East 660 feet of Lots 3 and 4 . . . was during the years 1928, 1929, 1930, 1931 and 1932 assessed to Herbert L. Thompson by the City of Azusa, and the said Herbert L. Thompson paid the City taxes on said 10 acres during all of the years from 1928 to 1932 inclusive. For the years 1933, 1934 and 1935, the said lands were assessed by said City of Azusa to Azusa Valley Savings Bank, the defendant herein, and all City taxes on said lands during said years of 1933, 1934 and 1935, were paid by said Azusa Valley Savings Bank. That neither the plaintiff nor his predecessors, Frank L. Dingman and Nettie L. Dingman, paid all of the taxes levied in any year against the 40 foot strip of real property in dispute in this action.

"16. At the time of the transfer of said East 660 feet of said Lots 3 and 4 to Herbert L. Thompson and Electa O. Thompson by Frank L. Dingman and Nettie L. Dingman it was intended by said grantors to convey to the said Thompsons a full 10 acres of orange trees and the grantees Herbert L. Thompson and Electa O. Thompson accepted the transfer under the belief that they were receiving 10 acres of orange trees."

We have read the entire record very carefully, and believe that there is a clear conflict in the evidence as to all of the issues raised by the appellant upon the question of adverse possession. The court below found that the appellant had not established title to the 40 feet in question by adverse possession and the record amply sustains such finding.

5. The final point urged by appellant is that the trial court was in error in refusing to grant costs to plaintiff and appellant. The trial court found that the defendant's answer amounted to a disclaimer of title to the westerly 70 feet of lots 3 and 4, and found against plaintiff's claim to any more of said lots than said westerly 70 feet. The trial court therefore concluded that the defendant was entitled to recover its costs of suit, which were thereafter taxed at $35.27.

Appellant by his complaint sought to quiet his title to the westerly 110 feet of lots 3 and 4. It is clear from defendant's answer that defendant made no claim to the westerly 70 feet of said lots. The easterly 40 feet of the westerly 110 feet was therefore the only property the title to which was in dispute, and the court below properly concluded that defendant's answer was a disclaimer of any interest in the said westerly 70 feet of said lots. The cause having proceeded to trial and plaintiff having failed to establish any title to any part of said lots 3 and 4 other than the westerly 70 feet, to which defendant asserted no claim, it is difficult to perceive upon what basis the court below would have been justified in granting costs to appellant.

In view of the foregoing, the judgment of the court below should be affirmed. It is so ordered.

Tuttle, J., and Pullen, P. J., concurred.