[Civ. No. 2571.   Fourth Appellate District.—March 18, 1941.]

JULIA  PIERSON, Respondent, v. HOMER  Q.  BRAD-FIELD  et al., Appellants.

Young & Wooldridge for Appellants.

Alfred Siemon and Bennett Siemon for Respondent.

GRIFFIN, J.—Plaintiff and respondent obtained judgment in a quiet title action against defendants and appellants.   The case concerned a controversy over the boundary between the eastern portion of lot 4, of Kern Citrus Tract, and the western portion of that lot.   Respondent owns the eastern portion of the lot and the several appellants own several pieces of

§

land that constitute the western portion of it. This suit to quiet title involves a strip of land fifteen feet in length. The common predecessors in title of all parties here involved were W. E. Van Meter and Anna Van Meter. On January 21, 1926, the above parties as grantors deeded to G. G. Pierson and Julia C. Pierson as joint tenants, "all of the easterly one-half of lot four (4), in the Kern Citrus Tract, according to the map of said tract filed on January 14, 1910 and recorded in book 1, page 132 of maps". Respondent at the time of suit was the sole owner of the above property by right of survivorship. The aforesaid Van Meters, as grantors, on January 21, 1926, deeded to H. E. Metzner "all the westerly one-half of lot four (4) in the 'Kern Citrus Tract'", according to the same map. The Metzners on May 4, 1936, deeded to Homer Q. Bradfield and wife as joint tenants "The North 234.54 feet of the West half of Lot 4 of Kern Citrus Tract", according to the same map, *"Excepting* an undivided ⅓ interest in and to that certain pumping plant site described as follows: Commencing at a point on the East line of the West half of said Lot 4, at a distance of 113 feet South of the Northeast Corner of said West half of said Lot 4; thence at right angles West 25 feet; thence at right angles South 25 feet; thence at right angles East 25 feet to the East line of the West half of said Lot; thence North along said East line 25 feet to the point of beginning; *Reserving* an easement for road purposes over the East 30 feet of the West half of said Lot 4".

For a period of approximately ten years prior to 1936 respondent and Metzner were co-terminus owners of the east and west halves of said lot 4. The official recorded plat of the tract is in evidence. It shows a roadway along the west side of lot 4 and the east-west measurements, both on the north and south sides of the lot, are from the center of said roadway. The width of the roadway is 60 feet. The north-south dimensions of the lot include the south half of a roadway 60 feet wide along the northerly side of the lot. The acreage of lot 4 shown on the map is 10 acres. By computation it is necessary to include half of each roadway in order to arrive at this acreage, and when so computed, the acreage as stated on the plat is correct with an excess of about 8 square feet. Whereas, if the roadways are excluded the acreage would be short about 38,000 square feet or nearly an acre.

The lot is undoubtedly measured on the official plat from the center of the streets.

The question in the case is whether the east and west halves of lot 4, on the west side of which there is a roadway, are divided by a line midway between the property line along said roadway and the easterly boundary of the lot, or by a line midway between the easterly boundary and the center of said roadway.

Respondent contends and the court found that the location of the dividing line was midway between the easterly boundary and the center of the roadway.

For a period of ten years Metzner and respondent did certain things which respondent contended amounted to a practical construction of their respective deeds as to the lands conveyed thereby and as to the location of the dividing lines. It is claimed and the evidence supports the argument, that the parties tacitly agreed that the dividing line of their property was, as respondent contends, midway between the easterly boundary and the center of the roadway on the west. Each used and occupied that land up to such time. They jointly put in a pumping plant which, under either construction, was entirely on the west half of the lot. They drew up a contract concerning the plant describing the site by metes and bounds and making the easterly side of the site coincide with the dividing line as contended for by respondent. The testimony shows that if the dividing line is as respondent contends the well would be at the approximate center of the site, while if the line is as contended for by appellants the well would be outside of the pumping plant site.

The record shows that in 1936 Metzner, with the purpose of subdividing the west half of the lot, employed a surveyor to survey and stake the dividing line. Metzner and his son attempted to survey the line themselves. Finding that the son was not licensed and that his survey would not be accepted for official purposes, Metzner employed a licensed surveyor. He informed the licensed surveyor where he and his son had surveyed the line. Metzner told the surveyor approximately where he and his son had placed the line. The surveyor found the stakes set by Metzner and found that each one of them was approximately on the line midway between the easterly boundary line and the center of the road on the west.

A different situation arises as to the deeds to the several appellants. The deed to the Bradfields contained no east-west dimension and placed the east boundary of the property conveyed to the Bradfields as coinciding with the east boundary line of the pumping plant site. The deeds to the Bollingers and Kirkpatrick contained an east-west dimension of 315.76 feet. It is conceded by respondent that the deeds by Metzner to Kirkpatrick and the Bollingers' predecessor in interest purport to convey property extending 15 feet over the dividing line as claimed to have been established by Metzner and respondent. As to such two conveyances the question is whether Kirkpatrick and the Bollingers received any title to the easterly 15 feet of the property purporting to be conveyed by their deeds.

The trial court found generally " . . . that the acreage (10 acres) stated on said map for said lot requires the inclusion of one-half of said roadways or streets"; that "during the time the property was held by plaintiff and her husband as to the East Half of said lot and by defendant H. E. Metzner as to the West Half of said lot under the deeds . . . said owners determined the boundary line dividing their said property by a survey fixing said boundary line mid-distance between the Easterly boundary of said lot and the Westerly boundary thereof as established by the center line of . . . the roadway or street on the Westerly side of said lot, and fixed said line on the ground by said survey; and thereafter the parties acquiesced in the same as the boundary line between their respective property and used and occupied up to the same on either side thereof"; that "said conveyances severally conveying portions of the westerly portion of said lot inaccurately described the conveyed property . . . ; that at the time of making said conveyances last above mentioned the Westerly boundary line of plaintiff's land . . . had been surveyed and fixed by the said Metzners and by plaintiff and her said husband as being the line equally dividing said lot into East and West halves, measuring from and including to the center of highways bounding said lot on the North and West; that at the time defendants . . . purchased said property from . . . Metzner the said boundary line between the East and West half, being the Westerly boundary of plaintiff's land . . . had been fixed upon the ground by stakes set along said line and at the corners of the respective parcels

of land constituting the West half of said lot; that when said Metzner conveyed to the other defendants it was understood by all of the grantees in said conveyances that their Easterly boundary lines coincided with the West boundary of plaintiff's land as described . . . that when deeds were drawn whereby . . . Metzner conveyed the West half of said lot in several parcels to certain of defendants . . . such deeds were drawn in such manner as to leave it uncertain in the descriptions in such conveyances as to whether the East and West dimensions of the several parcels of land were to be measured from the center of'' said road ''or from the property line along the East side of'' that road; ''that said conveyances were drawn arbitrarily and in disregard of the fact that the line dividing said lot in the center had been fixed by survey and on the ground by stakes as aforesaid and under the erroneous belief that said line should be fixed arbitrarily as midway between the East and West boundary lines of the usable portion of said lot, but each and all of the defendants who claim under said Metzners knew of the location of the line as fixed by the survey and stakes on the ground and none of them understood or believed that said conveyances conveyed anything Easterly of the Westerly line of plaintiff's property . . . that the several defendants . . . receiving conveyances of said several parcels of the West half of said lot, accepted said conveyances with the knowledge, belief and understanding that they conveyed properties respectively bounded on the East by the Westerly boundary of plaintiff's land as'' claimed by her.

Appellants rely principally upon *Earl* v. *Dutour*, 181 Cal. 58 [183 Pac. 438, 6 A. L. R. 1163], which decision is based upon the general and customary use of the word ''lot'' as not including a portion of the street bordering the lot. It was there held that:

''In the absence, . . . of any circumstance indicating that a more unusual and technical meaning of the word 'lot' was contemplated and intended by the grantor, it will be presumed that the grant of a fractional part . . . of land conveys the given fractional part . . . which is set apart for private use and occupancy.''

The case of *Peake* v. *Azusa Valley Savings Bank*, 37 Cal. App. (2d) 296, 301 [99 Pac. (2d) 382], is also cited. There is some factual similarity between the instant case and the

cited cases. However, in the instant case additional evidence was produced as bearing on the intention of the parties and under the circumstances a distinction has been drawn and the exception to the presumption has been well defined and stated in *Ferris* v. *Emmons,* 214 Cal. 501 [6 Pac. (2d) 950], where under similar circumstances it was held that the decision in *Earl* v. *Dutour, supra,* was not applicable because the record in the Earl case, as in the instant case, was "replete with evidence sustaining the findings of the court below and irrefutably indicating that the common grantor intended, by the respective deeds to the predecessors in interest of the parties hereto, to convey fractional parts of block 195 as measured from the center line of the adjoining streets", and that such evidence is admissible, not for the purpose of changing or adding to the deed, but for the sole purpose of explaining the language therein contained.

If the word "block", as used by the common grantor in the subdivision map and several deeds executed pursuant thereto, was intended by him to have a particular and peculiar meaning, it was competent for the court below to permit the introduction of parol evidence to establish that meaning. (*Norton* v. *Farmers' Automobile Inter-insurance Exchange,* 40 Cal. App. (2d) 556 [105 Pac. (2d) 136], and see, also, *Anderson* v. *Citizens Savings etc. Co.,* 185 Cal. 386 [197 Pac. 113].) The case of *Earl* v. *Dutour, supra,* merely states that the facts there existing created a *rebuttable presumption,* and its applicability depended upon the particular facts of each separate case. A rebuttable presumption may be rebutted by evidence opposed to it, and when the evidence is substantial a finding by the court thereon will not be disturbed on appeal (*Duehren* v. *Stewart,* 39 Cal. App. (2d) 201 [102 Pac. (2d) 784]). The evidence here substantiates the court's findings, and the judgment based thereon is not only reasonable but in accordance with equitable principles.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.