The bill of complaint seeks to restrain the defendants from occupying as dwelling houses a garage and a one-room summer house which are situated on the premises owned by the defendant Church in Mountain Lakes, Morris County. Complainants contend that such occupancy is in violation of certain restrictive covenants which are contained in the deeds of the parties.
The lands of the complainants and defendants are on opposite sides of North Briarcliffe Road nearly facing each other. The titles thereto were derived from a common grantor, Mountain Lakes Incorporated. The corporation was the owner of a large tract of land which it had developed and improved with single family dwellings and private garages. As portions of the tract were conveyed, the following covenant, which varied only with respect to the cost of the dwelling house and the location thereof, was included in the deeds from the grantor to the respective grantees.
"And as a part of the consideration hereto the party of the second part, for themselves, their heirs and assigns, does hereby covenant and agree to and with the party of the first part its successors and assigns, that without the written consent of the said party of the first part, its successors or assigns, the said party of the second part, their heirs or assigns, shall not at any time hereafter erect or cause or procure, permit or suffer to be erected upon the hereby granted premises or any part thereof, any building other than a single family private dwelling house to cost not less than $20,000 and not to be located within 60 feet of the street lines and 20 feet of the other boundary lines of said property and a private family garage of a design suitable to said property (to be approved in writing by the party of the first part, its successors or assigns,) which shall be erected upon a spot to be likewise approved by the party of the first part; nor at any time use or employ, cause or procure, permit or suffer to be used or employed by their lessees or tenants of said premises, or any part thereof, or by any other person holding possession of said premises or any part thereof, under their title, any buildings erected or which may hereafter be erected upon the said premises or any part thereof for any use or purpose other than a single family private dwelling house and a garage in connection with same; nor at any time let, cause, procure, or suffer to be erected or maintained a fence upon any part of said premises other than a hedge or light ornamental fence of a design to be approved by the party of the first part, its successors or assigns. And it is expressly understood and agreed that the said several covenants on the part of the party of the second part shall attach to and run with the land." *Page 176 
The premises presently owned by the defendant Church were conveyed by Mountain Lakes Incorporated to Joseph H. Adams by deed dated April 8th, 1920. The deed contained the foregoing covenant, inter alia. At the time of the conveyance, a large one-family dwelling house and garage were situated on the premises.
On June 16th, 1922, Mountain Lakes Incorporated and Joseph H. Adams entered into an agreement whereby the corporation consented to the erection of a "one room Summer House and a porch" on Adams' land. The agreement recited that the party of the second part (Adams) "agrees that said Summer House shall never be used as a dwelling or for living purposes, and shall be a covenant running with the land." Said agreement further provided:
"And it is mutually understood and agreed that this agreement shall bind and run to the heirs, successors and assigns of the parties hereto."
This agreement was recorded in the office of the clerk of Morris County on June 20th, 1922.
In the years 1924 and 1927, Adams built additions to the garage, enlarging and remodeling it for the purpose of housing his domestic servants. These improvements resulted in the addition of four rooms and three baths on the second floor, which were used as living quarters by the servants, and one room on the first floor which was used as a laundry. The cost of these additions amounted to $9,500. The uncontradicted testimony of one of the witnesses stated that the cost of the garage after the last improvements was made was $16,000 and its replacement cost to-day would be $28,000.
Subsequent to Adams' ownership, the premises were divided into three plots. The center plot, upon which the main dwelling is located, is now owned by a person who is not a party to this suit. The two end plots, one to the east of the dwelling house plot where the summer house is located and the other to the west of the dwelling house plot where the garage is located, are owned by the defendant Mona P. Church. Said defendant acquired title to these premises by deed dated June 15th, 1945, which recited, "Subject to * * * *Page 177 
restrictions of record," and occupied the garage premises with her family as a dwelling house. She has expended approximately $1,000 in improvements since she has occupied the same.
The defendant Church, on August 10th, 1946, agreed to sell the plot upon which the summer house is situated to the defendant Cassell. Upon the execution of the agreement, Cassell and his wife and two children commenced to occupy the summer house as their dwelling and expended $800 in improvements prior to the institution of this suit.
On October 11th, 1946, complainant filed this bill to restrain the defendant Church from continuing their residence in the garage and to restrain the defendant Cassell from occupying the summer house.
The defendants resist the complainants' right to bring this suit contending that it may be brought only if the restrictions were instrumental in creating a neighborhood scheme. They deny the creation or existence of such a scheme. The rule is that when such scheme is established, one purchaser, and his assigns, may enforce the covenant against any other purchaser, and his assigns, if he has bought with knowledge of the scheme and the covenant has been part of the subject-matter of his purchase.DeGray v. Monmouth Beach Club House Co., 50 N.J. Eq. 329.
In McComb v. Hanly, 132 N.J. Eq. 182, 185, the Court of Errors and Appeals, in restating Scull v. Eilenberg, 94 N.J. Eq. 759,771, sets forth the methods by which a scheme of that character may be created. The opinion states:
"* * * there are various ways by which a neighborhood scheme may be created in the development and sale of real estate, the most complete way being by a reciprocal covenant whereby the grantor covenants to insert like covenants in all deeds out of the common development; or, by selling them upon representations to the individual purchasers that like covenants will be inserted in the seller's deeds to others, for the common benefit; or, where the seller pursues a course of conduct indicating a neighborhood scheme, leading the several purchasers to assume its adoption and the adherence of all owners to it by such conduct." *Page 178 
The testimony adduced at the hearing brought forth the fact that the common grantor, Mountain Lakes Incorporated, established a neighborhood scheme which is still in existence by means of the third method set forth above. The deeds from that grantor contain similar restrictions which have been adhered to by the owners of the land subject to the restrictions. The only variations in the restrictions were as to setback distances and the cost of the dwellings which might be erected on the premises conveyed. The absence of complete uniformity does not preclude the holding that a neighborhood scheme was created by the common grantor. InSanford v. Kerr, 80 N.J. Eq. 240, 245, the court said:
"It is true that these restrictions varied in different sections in accordance with the designs of the promotors for the character of such sections, respectively, but this does not interfere with the integrity of a neighborhood scheme. Under such circumstances, the covenants applicable to each section become, to a certain extent, a separate scheme for that section, the various covenants on the different sections forming a general scheme for the whole, only in so far as all contain features common and beneficial to all."
The defendants contend that numerous and widespread violations of the restrictive covenants constitute an abandonment thereof. It was shown at the hearing that the violations, the leasing of third-floor apartments and rooms over garages were few in number and of a temporary nature. The premises so leased are to be vacated by the tenants as soon as other accommodations can be found by them. It would be inequitable to hold that these few violations operated to release the restrictive covenants since they are predicated upon the exigencies of the present severe housing shortage and the desire of the owners of the premises to assist those tenants in their need for shelter. It is only when the influence of the change upon the restricted area is such as clearly neutralizes the benefits of the restrictions to the point of defeating the purpose of the covenant that equity will deny its enforcement. Sandusky v. Allsopp, 99 N.J. Eq. 61, 64;Humphreys v. Ibach, 110 N.J. Eq. 647, 653. *Page 179 
The question here presented is whether or not the acts of the defendants in occupying the garage and summer house at their dwelling houses violate the provisions of the foregoing restrictive covenant. The determination of this question is contingent upon the application of the following well established equitable principles which have been succinctly stated in Paff
v. Margerum, 103 N.J. Eq. 74, 76.
"Restrictions upon the use of lands are always to be construed strictly, and ambiguities and uncertainties are to be resolved in favor of the owner's unrestricted use of the land. Marsh v.Marsh, 90 N.J. Eq. 244; Underwood v. Herman, 82 N.J. Eq. 353;Howland v. Andrus, 81 N.J. Eq. 175. Equity does not aid one to restrict another in the use to which he may put his land unless the right to such aid is clear, and when there is doubt as to the right, equitable relief will be denied. Fortesque v. Carroll,76 N.J. Eq. 583; Howland v. Andrus, supra; Underwood v.Underwood, supra."
Applying the above principles to the alleged violations presented in this case, I am convinced that the use of the garage premises as a dwelling house is not in contravention of the terms of the covenant. A careful examination of the covenant reveals that it is divided into two parts. The first part deals with the question as to what buildings may be erected and the second part concerns the use to which such buildings may be put. The prohibition in the first part of the covenant is directed entirely to future building. Future building is restricted to the erection of a single family private dwelling house unless the grantor otherwise consents in writing. When the corporate grantor which imposed the restrictions conveyed the premises there was already situated thereon a single family dwelling house and since the covenant permitted the erection of another dwelling house without the grantor's consent, Adams, the covenantor, proceeded to reconstruct the garage premises into a dwelling house for the use of his servants without first obtaining the consent of his grantor, in strict compliance with the provisions of the covenant. See Goater v. Ely, 80 N.J. Eq. 40, in which Vice-Chancellor Garrison held that a structure, on the ground floor of which was a boiler room and garage, and on the second floor bedrooms *Page 180 
and a bathroom, was a dwelling house. See, also, Matthews v.Captain, 99 N.J. Eq. 636.
I am of the opinion, however, that the occupancy of the summer house as a dwelling house by the defendant Cassell violates the covenant in question. The covenant permitted the erection of one more private dwelling house on the premises after its imposition. This permission was exhausted upon the conversion of the garage into a dwelling house by Adams. The consent which Adams had obtained from the original grantor before the summer house was constructed and of which the defendants had notice expressly prohibited the occupancy of the summer house "as a dwelling or for living purposes."
I shall advise a decree in conformity with the foregoing views.