Jerome E. STOCKDALE, Appellant,

v.

Stanley T. LESTER and Vivian E. Lester, husband and wife; and Herbert Allen, Appellees.

No. 52772.

Supreme Court of Iowa.

April 9, 1968.

Rosendahl & Forsyth, Estherville, for appellant.

Merrill C. Clark, Estherville, for appellees.

MOORE, Justice.

This is a declaratory judgment action, tried in equity, for construction of certain restrictive covenants pertaining to lots within a platted subdivision and for an injunction against defendants' proposed use of one lot as a public street. The trial court construed the covenants contrary to plaintiff's contentions and denied injunctive relief. Plaintiff has appealed.

In 1964 plaintiff, Jerome E. Stockdale, owned an undeveloped tract of land on the north side of Highway 9 in Estherville. Adjacent thereto to the east a smaller undeveloped tract was owned by defendant, Herbert Allen. Each contemplated platting and developing his land as an exclusive residential subdivision. Each was confronted with the problem of access as the grade of Highway 9 is considerably lower in elevation than the land of the respective parties.

In the fall of 1964 plaintiff met with the Estherville Planning and Zoning Commission concerning dedication and plat of his land to be known as Orchard Hill Addition. He also obtained from the State Highway Commission approval for access to Highway 9. He was required to eliminate one lot of the addition, to grade down the land and install a curving permanent roadway over the hill into the addition.

Defendant Allen at the same time met with the Planning and Zoning Commission and informed it his eventual plans called for developing his area to the east. He expressed a desire to tie into the street plan to be developed by plaintiff. Before approving Orchard Hill Addition plans the commission required plaintiff to change his plat to leave a 50 foot strip between Lots 2 and 3 in Block 1 running from Orchard Lane, a north-south street, to the west edge of Allen's tract.

The commission made no requirement the 50 foot strip be conveyed to Allen without cost or that a street be then put in. It remained available for such purpose at all pertinent times. Under the zoning ordinance plaintiff was required to pay the entire cost of grading, permanent street paving, sanitary and storm sewer lines, and curb and gutter in Orchard Hill Addition. His plat was later approved by the commission and the Estherville City Council.

The dedication and plat of Orchard Hill Addition as approved and recorded in the office of the County Recorder on December 15, 1964 contained these protective covenants pertinent to this appeal:

"1. All lots described herein shall be known, described and used solely as residential class lots, and no structure shall be erected on any residential building lot other than a detached one or two family dwelling not to exceed two stories in height and a one or more car garage.

"2. No lots shall be resubdivided to make any lots smaller than 70 feet by 120 feet.

"7. No noxious or offensive trade shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."

On July 13, 1966 plaintiff sold Lot 1, Block 1 of Orchard Hill Addition to defendants Stanley T. and Vivian E. Lester. Soon thereafter they conveyed it to Kirtland, Inc., a corporation owned and managed solely by defendant Allen. At trial time the deed to Kirtland had not been recorded. Lot 1, Block 1 runs north and south, fronts on Orchard Lane Avenue, is 80 feet wide, 120 long and parallels the 50 foot strip intended for a street but is separated therefrom by Lot 2, Block 1.

In the fall of 1966 Allen submitted to the Planning and Zoning Commission his preliminary plan for his addition, to be known as Woodland Heights Addition. Rather than any attempt to use the 50 foot strip in

Orchard Hill Addition, Allen announced his intention to use the north 50 feet of Lot 1, Block 1 for its entire length as a public street, to provide access from Orchard Hills to Woodland Heights, his proposed 19 lot new subdivision. He immediately began grading and other preparatory construction work on Lot 1, Block 1 for such a street. Further work on this land was enjoined pending outcome of this appeal.

The trial court held use of 50 feet of Lot 1, Block 1 as a public street would not violate restrictive covenants 1, 2 and 7. We do not agree.

■ I. Innumerable precedents hold restrictions on the free use of property are strictly construed against the party seeking to enforce them, they will not be extended by implication or construction beyond the clear and unambiguous meaning of their terms and doubts will be resolved in favor of the unrestricted use of property. Jones v. Beiber, 251 Iowa 969, 971, 972, 103 N.W.2d 364, 365; Maher v. Park Homes, Inc., 258 Iowa 1291, 1296, 1297, 142 N.W.2d 430, 434; 20 Am.Jur.2d Covenants, Conditions, etc., section 187; 26 C.J.S. Deeds § 163a.

■ This rule of strict construction obtains only where the wording of the restriction is ambiguous. Beeler Development Co. v. Dickens, 254 Iowa 1029, 1033, 120 N.W. 2d 414, 416; Maher v. Park Homes, Inc., supra.

■ Application of this strict rule of construction will not be allowed to subvert the manifest intention as shown by the entire instrument in which the covenant appears. Proper regard for the contemplated purpose of the parties must be had; the words used must be given their ordinary and obvious meaning as commonly understood, unless they have acquired a peculiar meaning in the particular relation in which they appear, or unless it clearly appears from the context it was intended to use them in a different sense. Jones v. Beiber, 251 Iowa 969, 972, 103 N.W.2d 364, 365, 366, and citations.

■ Attributing the ordinary and obvious meaning to the words "All lots described herein shall be * * * used solely as residential class lots" as found in covenant 1, it seems clear Lot 1, Block 1, could not be used as a public street.

■ The words "lot" and "street" are contra-distinctive terms and have separate, mutually exclusive meanings. City of Schenectady v. Trustees of Union College, 144 N.Y. 241, 39 N.E. 67, 68; Application of Dixon, 120 Cal.App. 635, 8 P.2d 881, 882; State of California v. United States, Cir. 9, 169 F.2d 914, 919; Loveladies Prop. Own. Ass'n v. Barnegat City Serv. Co., 60 N.J.Super. 491, 159 A.2d 417, 423; Peake v. Azusa Valley Sav. Bank, 37 Cal.App.2d 296, 99 P. 2d 382, 384; Pierson v. Bradfield, 43 Cal. App.2d 519, 111 P.2d 460, 463; 25 A Words and Phrases, Perm Ed. "Lot," page 430.

Montgomery v. Hines, 134 Ind. 221, 225, 33 N.E. 1100, 1101, states: " 'Lot' and 'street' are two separate and distinct terms, and have separate and distinct meanings. The term 'lots', in its common and ordinary meaning, includes that portion of the platted territory measured and set apart for individual and private use and occupancy; while the term 'streets' means that portion set apart and designated for the use of the public, and such is the sense in which such terms will be presumed to have been used, unless it be made to appear that a contrary meaning was intended.' "

Defendants-appellees rely heavily, as did the trial court, on Bove v. Giebel, 169 Ohio St. 325, 159 N.E.2d 425. It is readily distinguishable on the facts. In Bove the restriction "for residential purposes only" was held not to prohibit use of a 25 foot strip on a lot as a private driveway to a six acre tract owned by the same person and to be used for two residences. The driveway was the only available means of access and was to be private, not a public street. Similar facts are found in R. R. Improvement Association v. Thomas, 374 Mich. 175, 131 N.W. 2d 920, and McInerney v. Sturgis, 37 Misc. 2d 302, 234 N.Y.S.2d 965, cited by defend-

ants-appellees. A public street, like the one here, over which the parties would have no control, is not comparable to a private driveway found in the three cited cases. Also, other access is available here.

Plaintiff in Thompson v. Squibb, Fla. App., 183 So.2d 30, brought an action to enjoin defendant from using a portion of a lot which was subject to covenant restricting use for residential use as a connecting street between adjoining subdivisions. The court granted the injunction and ordered defendant to remove all paving which he had constructed on the lot in question.

The covenant read: "All land included in Mobile Homes Estate shall be used for residential purposes only, except such lots, blocks or parcels as may be hereafter designated for other purposes by the Committee."

At page 32 the court said: "There is no ambiguity in the expression 'shall be used for residential purposes only.' As employed in this covenant, the word 'only' is synonymous with the word 'solely' and is the equivalent of the phrase 'and nothing else.' "

At pages 32 and 33 the court states: "It is obvious that the use of defendant's lot as a connecting street so that there would be access from the streets of the adjoining subdivision to those of the subdivision for whose benefit the restrictive covenants were made is not in any sense a residential use or a use incidental thereto."

Use of Lot 1, Block 1 as a street would clearly violate the restriction that it was to be used solely as a residential class lot.

II. Use of the 50 foot strip over the entire length of Lot 1, Block 1 for a public street would result in the remaining 30 foot strip becoming a separate lot. The trial court held such remaining strip not violative of covenant number 2, provided no building was placed thereon. We do not agree. We hold establishment of a public street on a 50 foot strip of Lot 1, Block 1, leaving a 30 foot strip thereon, would be resubdividing in violation of the restrictive

covenant 2 under its plain ordinary meaning.

III. Our holding as to covenants numbered 1 and 2 makes consideration of covenant number 7 unnecessary.

We conclude plaintiff is entitled to a permanent injunction against defendants, enjoining them from using any part of Lot 1, Block 1, Orchard Hill Addition for the proposed street.

The decree of the trial court is reversed and the cause remanded for decree in harmony with this opinion.

Reversed and remanded.

All Justices concur, except LARSON, J., who dissents.

LARSON, Justice.

I respectfully dissent.

I. As the majority concedes, restrictions on the free use of property are strictly construed against the party seeking to enforce them; they will not be extended by implication or construction beyond the clear and unambiguous meaning of their terms. All doubts will be resolved in favor of the unrestricted use of the property. Jones v. Beiber, 251 Iowa 969, 971, 972, 103 N.W.2d 364, 365; Maher v. Park Homes, Inc., 258 Iowa 1291, 1296, 1297, 142 N.W.2d 430, 434. See also Albrecht v. State Highway Commission (Mo.), 363 S.W.2d 643, 645, and citations; Bove v. Giebel, 169 Ohio St. 325, 159 N.E.2d 425, 428, and citations; Wickwire v. Church, 142 N.J.Eq. 174, 59 A.2d 416, 419, and citations; Palermo v. Allen, 91 Ariz. 57, 369 P.2d 906, and citations; Brown v. Hojnacki, 270 Mich. 557, 259 N.W. 152, 153; 20 Am.Jur.2d Covenants, Conditions, etc., § 187; 26 C.J.S. Deeds § 163a.

The majority, however, erroneously concludes that, because the words "street" and "lot" are not synonymous, the covenant herein precludes the use of a lot for a street even though not expressly stated as such. This conclusion is in conflict with the rule

recognized in Division I of the majority opinion, which they fail to apply. This generally-accepted rule is actually comprised of three parts: (1) Restrictions on use are strictly construed against the party seeking to enforce them; (2) such restrictions will not be extended by implication or construction beyond their clear and unambiguous meaning; and (3) if a restriction is ambiguous or doubtful, it will be resolved in favor of the unrestricted use of the property. The only ambiguity or doubt that could possibly exist as to use in this covenant would be as to the construction and meaning of the words "residential class lots." Since there is no express preclusion of their use as streets in the covenant, under the above rule it cannot reasonably be said that a lot used as a street is inconsistent with this classification or in violation of this covenant. Jones v. Beiber, supra, and Maher v. Park Homes, supra.

The restrictive covenant involved in the instant case states in part:

"1. All lots described herein shall be known, described and used solely as residential class lots, and no structure shall be erected on any residential building lot other than a detached one or two family dwelling not to exceed two stories in height and a one or more car garage.

"2. No lots shall be resubdivided to make any lots smaller than 70 feet by 120 feet.

"7. No noxious or offensive trade shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."

II. The majority fails to acknowledge or discuss the decisive point in issue, i.e., the construction which must be given a protective covenant restriction such as that involved herein. It is commonly referred to and operates as a negative reciprocal easement. See Anderson v. Lynch, 188 Ga. 154, 3 S.E.2d 85, 87; City of Houston v. Wynne (Tex.Civ.App.), 279 S.W. 916, 919; Friesen v. City of Glendale, 209 Cal. 524, 288 P.

1080, 1082. See also Berger, Land Ownership and Use, pages 393–396 (1968); Reno, The Enforcement of Equitable Servitudes in Land, 28 Va.L.Rev. 951, 972–978.

An affirmative easement, of course, is one which authorizes the doing of acts which, if no easement existed, would give rise to a right of action, while a negative easement is one which precludes the owner of land subject to such easement from doing an act which, if no easement existed, he would be entitled to do. Wilson v. Owen (Mo.), 261 S.W.2d 19, 24; Anderson v. Lynch, supra, and citations; Vol. 3, Tiffany, Real Property, 3rd Ed., § 756, page 201; Berger, Land Ownership and Use, supra. Stated in other words, an affirmative easement involves the creation of a privilege, while a negative easement involves the withdrawal of a privilege. Obviously, we are here dealing with a negative reciprocal easement. It is not an affirmative easement or right in land that would permit physical use or occupation thereof by other lot owners in the subdivision. It is merely an equitable servitude enforceable in equity upon a showing that it would be unconscionable to permit one who had contracted to use his property in a particular way to violate his agreement. Friesen v. City of Glendale, supra. The nub of this case, as I see it, is whether negative reciprocal easement, such as we have here, will be so construed as to preclude the use of this lot as a street when that use is not expressly or even inferentially prohibited in it. I do not think so.

III. Clearly, there is no restriction in this covenant that expressly precludes the use of a residential class lot as a street. Although the words "street" and "lot", as the majority stresses, are not synonymous, this is not the vital issue. The issue, as I see it, is whether the use of a lot for a street violates the residential class lot restriction which has no such express or implied use restriction in it.

In Friesen v. City of Glendale, supra, 209 Cal. 524, 288 P. 1080, 1081, a third party dedicated and deeded a lot which it owned

to the City of Glendale, which accepted the deed and dedication and ordered a street to be constructed across the lot. The restrictions on the lot inter alia stated: "That said premises shall be used for [residential] purposes only." Plaintiff alleged that the construction of a street across the lot violated the restrictive covenant and that it could not be used for that purpose because it was not consistent with the use of land for residential purposes. In rejecting that contention, the court therein stated: "It is apparent that the use of a portion of the lots for public street purposes is not only not inconsistent with the use of the remaining lots for the purpose intended, but may be essential to the continuance and preservation of such intended use. There is nothing in the deeds issued in accordance with the general plan * * * which could be construed to prevent the use for street purposes * * *." Friesen v. City of Glendale, supra, at 1082 of 288 P., and citations.

In the case at bar it cannot be said that the opening of a street across a residential class lot is inconsistent with a residential purpose, especially under these circumstances. It is clear here that the defendant could not obtain ingress and egress to his subdivision from any public street because of the terrain unless he purchased, at plaintiff's price, a 50-foot strip of land running from a street in plaintiff's subdivision to his land, even though the proposed street must be presumed to be of some public utility. See Anderson v. Lynch, supra. Equity frowns upon such unfair contentions. Certainly, any relief granted plaintiff here should be conditioned upon his conveyance and dedication of the 50-foot strip he designated for ingress and egress to defendant's area.

In any event, it must be conceded that streets are contemplated necessities in residential subdivisions. If not expressly precluded by negative reciprocal easements or similar restrictions, they are proper, useful, and valuable assets to such a residential area. Courts have so held. See Anderson v. Lynch, supra; Baxendale v. Property

Owners' Ass'n of North Shore Acres, Inc., 309 N.Y. 871, 131 N.E.2d 287; Smith v. Government Realty, 172 Md. 547, 192 A. 341; Albrecht v. State Highway Comm., supra; Bove v. Giebel, supra; Palermo v. Allen, supra; Friesen v. City of Glendale, supra; and Friedman, Contracts and Conveyances of Real Property, 2d Ed., § 4.36.

An analogous situation arose in Anderson v. Lynch, supra. There the county was about to purchase a lot from one of the owners of a residential lot, with restrictions similar to the instant case, the same to be used as a public road. As here, the plaintiffs contended that this could not be done as it violated the restrictive covenant on the lots in that area. The pertinent part of the restrictive covenant there also stated: "Said property * * * shall be used for residence purposes * * * ." Anderson v. Lynch, supra, 3 S.E.2d at page 86. Plaintiffs contended that the only way in which the county could build the road through the lot was by condemnation. The court rejected this argument and, in holding that the purchase of the lot for a street did not violate the restrictive covenant, stated: "If the county authorities had the right to condemn this land for the purpose stated, it was their privilege to acquire the land by private contract with the owner or owners, without resorting to the process of condemnation; * * * ." Anderson v. Lynch, supra, 3 S.E.2d at 90. If that be so, I can think of no reason why a private party could not also buy such a lot, dedicate it, and use it for a public street.

IV. The majority agrees with the plaintiff that constructing a street on one of the aforementioned lots would violate provision 2 of the covenant, which in essence states that a lot may not be smaller than 70 feet by 120 feet. The majority summarily concludes that since the street itself is to be only 50 feet wide, a 30-foot strip would be left over, which in effect resubdivides the lot in violation of the covenant. This conclusion leaves me cold for I find nothing to indicate a use made of a lot must include all of it. No subdividing here is alleged or

shown by the record. The 30-foot strip "left over" may easily become an integral part of the street improvement. Does the majority contend a residence built on one side of the lot, with a 30-foot yard "left over", amounts to subdividing? In any event, whatever you call the strip left over, as long as it is developed in conjunction with the principal use of the lot as a street, it cannot be said to be a separate lot and would not be in violation of the covenant. There is no showing here that the owner intended to sell or use the remaining 30 feet for any other purpose, and I would affirm the trial court's decision.