HAROLD OTTO JONES et al., appellants, v. JOCK R. BEIBER et ux., appellees.

No. 49895.

(Reported in 103 N.W.2d 364)

JUNE 14, 1960.

Don A. Petruccelli, of Davenport, for appellants.

Bertram B. Metcalf, of Davenport, for appellees.

HAYS, J.—January 12, 1948, Benjamin J. Stewart and wife conveyed by warranty deed to Morris Goldstein certain described real estate in Scott County, Iowa. This deed contained the following paragraph:

"It is a covenant and condition of this conveyance that no part of the real estate hereinabove described shall at any time be used for a commercial garage, used car sales lot, tavern or night club nor shall any intoxicating liquors be sold upon any part of said premises. The grantee herein and his heirs, devisees and assigns are hereby specifically given the right to

use the Southerly 200 feet of the West 200 feet * * * for filling station purposes or, for grocery store purposes or both. *All buildings erected upon the real estate * * * shall be of a permanent character and be upon foundations and shall not be less than 14 feet by 18 feet in size. No. garage, trailer, shack or hut shall be used for living purposes. These covenants shall be covenants running with the land and shall be binding upon the grantee herein, his heirs, and assigns."*. (Italics added.)

January 20, 1948, Goldstein platted this tract in lots and streets and gave it the name of "Devils Glenn Acres." Plaintiffs are individual owners of various of these lots and have erected thereon dwellings of a permanent nature and costing not less than $10,000 each. In August 1957 defendants became owners of Lot 23 in said "Devils Glenn Acres." On July 7, 1958, they moved a trailer 8 feet wide and 51 feet long onto said lot. They removed the wheels, placed it on cement blocks, leaving the axle and trailer hitch which they concealed by siding placed around the base thereof. It was connected with water, electricity and a septic tank and is being used by them as their home.

In this suit in equity plaintiffs seek to enjoin defendants from so using it, alleging it to be in violation of the terms of the covenant above set forth. The trial court found it was no longer a trailer but a permanent structure attached to the soil; that it is larger in size than the covenant requires and denied the injunction. Plaintiffs appeal.

■■ While the law favors the free legal use of land by its owner and frowns upon restrictive covenants, they are recognized and enforceable in a court of equity where the intention of the parties is clear and the restrictions reasonable. Thodos v. Shirk, 248 Iowa 172, 79 N.W.2d 733; Grange v. Korff, 248 Iowa 118, 79 N.W.2d 743; 26 C. J. S., Deeds, section 171; 14 Am. Jur., Covenants, Conditions and Restrictions, section 337. In the instant case the facts are undisputed; the existence of the covenant is conceded and the question of its reasonableness is not involved. The sole problem is ascertaining the intention of the parties to the covenant; to determine when a trailer ceases to be a trailer within the purview thereof.

■■ While such covenants, when ambiguous, are to be

strictly construed in favor of a free and unrestricted use of realty, effect must be given to the manifest intention of the parties as shown by the language of the entire instrument in which the covenant appears. Due regard must be had for the purpose contemplated by the parties thereto, and words used must be given their ordinary and obvious meaning as commonly understood at the time the instrument was executed, unless they have acquired a peculiar meaning in the particular relation in which they appear, or in respect to the particular subject matter involved, or unless it clearly appears from the context that the parties intended to use them in a different sense. 26 C. J. S., Deeds, section 163; 14 Am. Jur., Covenants, Conditions and Restrictions, section 211; Curtis v. Schmidt, 212 Iowa 1279, 237 N.W. 463.

Appellees' entire argument in support of the trial court's decree is based upon the proposition that the trailer since being placed upon the lot has undergone such a transformation as to remove it from the classification of being a trailer; that by placing it on cement blocks, how many does not appear, removing the wheels and attaching it to the various utilities, it has become a building and on the basis of square feet meets and exceeds the minimum dimensions required by the covenant. In support thereof they cite authorities dealing with zoning ordinances, taxation and homestead exemptions. It may be conceded that as this trailer now stands it may be classed as a building, and probably could be so classed even though the wheels had not been removed and cement blocks placed thereunder. Curtis v. Schmidt, 212 Iowa 1279, 237 N.W. 463; 12 C. J. S., Building, page 378. It might perhaps well be argued that by moving the trailer onto the lot it was not erected within the ordinary meaning of such word and thus escapes the restriction as to dimensions of 14 feet by 18 feet. 30 C. J. S., Erect, pages 1133, 1134; Foos v. Engle, 295 Ky. 114, 174 S.W.2d 5; and that it is as much of a dwelling as any house that is built upon a permanent foundation, Lower Merion Twp. v. Gallup, 158 Pa. Super. 572, 46 A.2d 35. Even conceding all of the foregoing matters and all findings of the trial court, there still

remains unanswered the question as to when a trailer ceases to be a trailer within the purview of the covenant.

The particular restriction in question, "No garage, trailer, shack or hut shall be used for living purposes", appears to be directed toward the type of building that may be used for dwelling purposes. We find nothing in the entire instrument that forbids the erection or placing of such types of structures or buildings upon the lots; just that they may not be used for dwellings. The various types prohibited have distinct characteristics when given their ordinary and common meaning. Webster's International Dictionary defines them as follows: "Garage", a building for housing automotive vehicles; "Trailer", a nonautomotive highway vehicle designed to be hauled, as by a tractor, * * *; "Shack", a hut; shanty; a small roughly built house; "Hut", a rude small house, hovel, or cabin. It may be these restrictions as to use as a dwelling may have been based upon aesthetic considerations, apparently they were at least in part, but we are dealing with a matter of contract the reasonableness of which has not been questioned. It seems clear that it was the intent that certain types of structures should not be used as dwellings in this subdivision.

Giving the word "trailer" its usual and common meaning, as above set forth, and notwithstanding its transformation, as is above set forth, it still retains its basic characteristic of being "designed to be hauled." It still remains 8 feet wide and 51 feet long and thus stands in marked contrast to the type of a building that is 14 feet by 18 feet in dimension. It was conceded to have originally been a trailer and, within the purview of the restrictive covenant, it still remains a trailer. The use thereof by the defendants constitutes a violation of the covenant which the plaintiffs, as owners of lots bearing the same benefits and burdens as does Lot 23, are entitled to have enjoined.

The cause is reversed and remanded for a decree in accord herewith.—Reversed and remanded with directions.

All JUSTICES concur except OLIVER, J., not sitting.