Clare J. Hoyt, J.
Plaintiffs, the owners of some 62 acres of vacant land in the Town of Cortland, Westchester County, New York, bring this action against the defendant, the owner of a one-family house situated on a one-half acre parcel conveyed to her by plaintiffs’ predecessor in title, for a declaratory judgment to permit the sale of 15 acres from the tract for a community hospital in spite of restrictive covenants limiting the land to residential use.
Plaintiffs’ predecessor in title, Chester Rick, in 1946, purchased the tract which at the time was free of restrictions and covenants and subject to no zoning ordinances. Mr. Rick, in 1947, filed in the Westchester County Clerk’s office a “ Declaration of Covenants, Restrictions, Reservations and Agreements ” which voluntarily imposed upon the 62 acres covenants restricting them to exclusive residential use, with single-family dwellings and provided for elaborate restrictions as to the location of houses, preservation of views, planting and road layout to conform to a community plan, whose purpose and intent was described in the declaration “ to establish a community of good character and appeal to people of culture and discriminating taste at a minimum cost”. In October of 1955 defendant contracted to purchase from Rick a half-acre lot for the sum of $2,000 and in September of 1956 Rick delivered his deed to the defendant conveying said premises, and about a year later defendant built her house upon this lot where she now resides.
In the period between the contract with and the conveyance to the defendant, Rick filed a revision of the declaration of covenants, restrictions and agreements which repeated the original declaration purposes, intent, exclusive residential use, minimum size plot, etc., but deleted a declaration for the construction of bathing and play sites and certain roads, and *1004 deleted, provisión for the formation of a community association for plot owners to control such areas. The revision thus indicates that some of the development features originally envisioned were abandoned, but the declaration as revised still clearly restricted the whole tract to residential use with no more than one detached single-family dwelling unit not exceeding one and one-half stories in height on each lot. These restrictions were in effect when the defendant acquired title, and they were referred to in her deed and the proof shows that she discussed these restrictions with Rick when purchasing, and relied upon them, and was influenced by them in deciding to buy the lot and erect and make her home thereon.
A few days prior to Rick’s conveyance to the defendant he contracted for the sale of 45 acres of the parcel to an industrialist, the sale being conditioned upon a rezoning of the parcel (the parcel had been zoned residential in 1957) and a release of the restrictive covenants. A few days after the conveyance to the defendant, Rick made application to the Planning Board for the zoning change and the Planning Board was not advised of the restrictive covenants affecting the premises and the defendant was not notified of the application for a hearing thereon. The Town Board, on the recommendations of the Planning Board, amended the Zoning Ordinance to rezone the 45 acres to light industrial use. The defendant did not release the covenants in her favor affecting the 45 acres and the sale was not consummated.
In 1959 Rick conveyed to plaintiffs the 62-acre parcel, being all the original tract less the plot sold to the defendant and a few other plots sold by him.
In May of 1961 the plaintiffs contracted to sell to the Peekskill Hospital 15 acres from the plot and defendant’s refusal to consent to the same is the basis of this litigation.
• The original declaration and the revision thereof each contained the identical paragraph eighth, “eighth: — These covenants and conditions are prepared to clearly indicate the character of the Community.to be established, but it is understood that special unforseen conditions may require exceptions in certain cases, which may be permitted by the written consent of the seller providing the spirit and intent of these covenants and restrictions are adhered to.”
The plaintiffs contend that the proposed sale to the Peekskill Hospital is. a “special unforeseen condition” requiring an exception and the plaintiffs’ grantor and the plaintiffs have executed a consent and execution pursuant to said paragraph eighth to permit the erection of the hospital.
*1005 The plaintiffs further claim that since Rick’s acquisition of the property in 1947 the neighborhood and area has changed, that zoning is now in effect where none existed, that a gas transmission line making portions unusable for ■ residential purposes has bisected the property and that a lumber yard, manufacturing and commercial establishments have come into being adjacent to the property and that because of the changed conditions the declaration and amended declaration imposing these restrictions are no longer enforcible and that the restrictions are of no actual or substantial benefit to the defendant.
A declaratory judgment is sought to permit the sale of the 15 acres for the hospital, to declare the restrictions no longer enforcible or of actual or substantial benefit, and to declare the defendant be limited to pecuniary damages, if any, for any violations of the restrictions.
The plaintiffs called two witnesses to testify as to the pecuniary damages, if any, that might be sustained by defendant were the proposed hospital to be erected. One witness indicated there Avould be no depreciation in value and the other indicated a $5,000 depreciation. In view of the court’s ruling, this testimony is not of any significance.
Defendant contends and alleges as an affirmative defense that the plaintiffs’ claim should be defeated because of the bad faith shoAAm by Chester Rick. The claim of bad faith is based upon Rick’s petitioning to rezone the 45 acres adjacent to defendant’s home Avithout defendant’s knoAvledge and without notice to the Planning Board of the existence of the coA^enants. The court need not consider this to determine that plaintiffs are not entitled to the relief they seek since other grounds more substantial and determinative exist.
Plaintiffs’ contention that the Avritten contract of the sellers, herein given, permit exceptions to the covenants and conditions when required by special unforeseen circumstances is untenable. The exception here sought Avould permit the erection of a hospital on a 15-acre plot on an elevation close to defendant’s property toAvard Avhich elevation the front of defendant’s property faces. To sustain this contention would mean that all the covenants and conditions would be subject to repeal by the simple written consent of the sellers. The character and use of the entire 62-acre parcel could thus be changed by the sellers.
The revised declaration, although omitting the original elaborate plans for bathing and play areas and a community association, repeated the original restrictions that “ all plots in the tract of land *. * * shall be used exclusively for resi *1006 dential purposes and no structure shall be rented, allowed, placed or permitted to remain upon any plot other than one detached single family dwelling ’ ’.
. This paragraph eighth, which plaintiffs would treat as an escape clause, by its very terms shows the unsoundness of that position since it states: ‘ ‘ these covenants and conditions are prepared to clearly indicate the character of the community to be established ’
Many provisions in the restrictions could be modified without changing ‘ ‘ the character of the community to be established, ’? such as minimum lot size, angle of lots or plantings. The written consent of the sellers could waive or modify these provisions. It cannot, however, unincumber a 15-acre tract in the parcel from the residential restrictions.
Plaintiffs contend that substantial changes have occurred in the neighborhood since the filing of the covenants. This, they say, warrants the court in declaring the covenants unenforcible. This contention is equally untenable. The only changes to be considered are those occurring after January 31, 1956, when the revised restrictions and convenants were filed. The gas transmission line and certain commercial establishments which it is claimed changed the neighborhood came into being before the filing of the revised restrictions.
The only changes since the refiling were two commercial establishments not visible from defendant’s property and on the far side of a highway not abutting defendant’s lot and not even abutting plaintiffs ’ tract.
There is no evidence of any substantial change in the general neighborhood since the last affirmation of the restrictions and there is no change at all within the parcel owned by the plaintiffs.
In Cummins v. Colgate Props. Corp. (2 Misc 2d 301, 305, affd. 2 A D 2d 749) there is found an enforcement of restrictions on these conditions. Mr. Justice Eager held: “In order that an alleged change in neighborhood shall be a defense to this type of action, the change must be substantial and such as to support a finding that the usefulness of the covenant has been destroyed. Equity may refuse to enforce a restrictive covenant upon the ground of conditions only where it is established that the change is such that the restriction has become valueless to the property of the plaintiffs and onerous to the property of defendants (see Todd v. North Ave. Holding Corp., 121 Misc. 301, 305, affd. 208 App. Div. 845). * * * Ordinarily where the protected area, itself, has not deteriorated, such covenant is enforcible in equity despite a change in the surrounding area.”
*1007 The rezoning of a large part of the 62-acre parcel to an industrial use, including the area upon which it is desired to build the hospital, and omitting any consideration of the time and manner in which the rezoning was accomplished, cannot be considered as affecting the restrictive covenants (Lefferts Manor Assn. v. Fass, 28 Misc 2d 1005).
The parcel in question would doubtless by its togography and proximity to fast-growing suburban areas make a desirable location for the hospital. The hospital authorities would like to acquire it, and the plaintiffs would like to sell it, and it may be asked why should defendant owning a most respectable, but modest, home be permitted to prevent the sale, or in any event why should the covenants be not determined nonenforcible and the defendant relegated to pecuniary damages.
Plaintiffs’ predecessor owned the tract free and clear of all restrictions. He could do with the parcel as he saw best. He elected to promote a residential development and in the furtherance of his plan, and as an inducement to purchasers he imposed the residential restrictions. The defendant relied upon them and has a right to continue to rely thereon. It is not a question of balancing equities or equating the advantages of a hospital on this site with the effect it would have on defendant’s property. Nor does the fact that defendant is the only one of the few purchasers from plaintiffs’ predecessor in title who has refused to release the covenants make defendant’s insistence upon the enforcement of the covenants no less deserving of the court’s protection and safeguarding of her rights.
The opinion of Judge Cardozo in Evangelical Lutheran Church of the Ascension, of Snyder, N. Y. v. Sahlem (254 N. Y. 161, 166, 168) is quoted at length since the questions therein presented are so similar to those in the case at bar.
“By the settled doctrine of equity, restrictive covenants in respect of land will be enforced by preventive remedies while the violation is still in prospect, unless the attitude of the complaining owner in standing on his covenant is unconscionable or oppressive. Relief is not withheld because the money damage is unsubstantial or even none at all (Trustees of Columbia College v. Lynch, 70 N. Y. 440, 453; Trustees of Columbia College v. Thacher, 87 N. Y. 311, 316; Rowland v. Miller, 139 N. Y. 93, 103; Forstmann v. Joray Holding Co., Inc., 244 N. Y. 22, 31; Star Brewery Co. v. Primas, 163 Ill. 652; Lord Manners v. Johnson, L. R. 1 Ch. Div. 673).
*1008 “ Here, in the case at hand, no process of balancing, the equities can make the plaintiff’s the greater when compared with the defendant’s, or even place the two in equipoise. The defendant, the owner, has done nothing but insist upon adherence to a covenant which is now as valid and binding as at the hour of its making. His neighbors are willing-to modify the restriction and forego a portion of their rights. He refuses to go with them. Rightly or wrongly he believes that the comfort of his dwelling will be imperilled by the change, and so he chooses to abide by the covenant as framed. The choice is for him only. Neither at law nor in equity is it written that a license has been granted to religious corporations, by reason of the high purpose of their being, to set covenants at naught. Indeed, if in such matters there can be degrees of-obligation, one would suppose that a more sensitive adherence to the demands of plighted faith might be expected of them than would be looked for of the world at large. Other owners may consent. One owner, the defendant, satisfied with the existing state of things, refuses to disturb it. He will be protected in his refusal by all the power of the law. ’5
For the reasons stated in the above-quoted portion of Judge Cardozo’s opinion, and since section 346 of the Real Property Law provides no basis for awarding pecuniary damages when the restriction is not outmoded and when it affords real benefit to the person seeking its enforcement, no consideration can or should be given to any award of pecuniary damages to the defendant in lieu of the enforcement of the restrictions. The plaintiffs, thus, have not established- their proof under either cause of action, and are not entitled to-the declaratory judgment they seek.