BEELER DEVELOPMENT COMPANY, appellant, v. CATHERINE M. DICKENS et al., appellees.

No. 50817.

(Reported in 120 N.W.2d 414)

1030

MARCH 12, 1963.

Ries & Osmundson, of Iowa City, for appellant.

Clearman, Oehler, Barker & Meeker, of Iowa City, for appellees.

THORNTON, J.—Plaintiff, Beeler Development Company, brings this action to enjoin the enforcement of a restrictive covenant providing, "No residential lot shall be re-subdivided." Defendant lot owners in their cross-petition ask plaintiff and those holding under it be enjoined from present and future violations. The trial court enjoined plaintiff and those holding under it and it appeals.

The land in question here was platted as C. R. Regan Addition to Iowa City in August of 1940. The dedication of the plat as filed included restrictive covenants. The intention of the proprietor is expressed thus,

"WHEREAS the undersigned desire to maintain said Addition as a high class sub-division, and to protect the owners of lots in said Addition in their enjoyment and use of the property,

"Now, THEREFORE, the undersigned for the mutual benefit of themselves and the future owners of lots in said Addition, do hereby impose the following restrictive covenants as a blanket encumbrance upon all the lots in said addition to wit:"

The first restriction restricts the lots to residential lots. The second provides for building line restrictions. The third, in question here, is, "No residential lot shall be re-subdivided." The restrictions also included a provision that no home constructed in the addition should cost less than $2500. The addition contains 61 lots. The restrictions terminate January 1, 1970.

At the time the addition was platted the original proprietor had a two-story and attic home situated on Lot No. 61. Lot No. 61 is triangular in shape, is bounded on all three sides by streets, and contains 33,200 square feet, 81/100 acre. The other lots vary in size from 6720 to 8611.75 square feet. There was little activity in the addition until 1953. At that time there were some six homes. Since then the entire addition has been built up with a house on every lot with few exceptions. The homes are in an average price range of $13,000 to $16,000. Some are valued as high as $25,000. Some are prefabricated.

Plaintiff acquired Lot 61 in 1956 for $18,500. In 1957 plaintiff filed a plat of Lot 61, platting it into Lots 61A, 61B and 61C. Lot 61C has been sold by plaintiff with some agreement by plaintiff to repurchase or indemnify in the event this action is unsuccessful. The purchaser had started construction, a garage has been built and a basement started. Work was stopped by the temporary injunction issued herein. Lot 61A, on which is located the old two-story and attic home, is also sold. Lot 61A contains 13,000 square feet, Lot 61B 9500 square feet, Lot 61C 10,700. These lots cut from the triangle are odd shaped. This is also true of the lots owned by defendants Welt and Dickens. The other lots are rectangular in shape.

Plaintiff has caused to be circulated and signed an agreement waiving restrictions on Lot 61. It has been signed by a large number of lot owners, the record does not show whether the signers are owners or tenants. It is clear that only three owners, owning seven lots among them, are defendants. One owner who had signed testified for defendants.

Defendant Welt owns Lots 53, 54 and 55. These lots and Lot 56, on which is located the home of defendant Dickens, are located on a triangular piece of land similar to, but somewhat smaller than, Lot 61, and separated from it by a street. The Welt home is located on Lot 53, the other lots are vacant. Mr. Welt testified he purchased the extra lots so houses could not be crowded in there. He does concede he would have sold one of them as a building lot but the prospective purchaser found placing a home on a lot of such size and dimensions illogical.

Defendant Wawzonek owns Lots 57, 58 and 59. His home is located on Lot 57. He acquired Lots 58 and 59 because he did not want to be crowded.

Lot No. 7 was re-subdivided by taking 6.5 feet off the south and adding it to Lot 8, thus leaving Lot 7 sixty feet wide.

Plaintiff's evidence included that of plaintiff's president, a realtor, and another realtor. Both were of the opinion the subdivision of Lot 61 would have no detrimental effect on the value of the other lots.

The defendants each testified they relied on the restrictions in building their homes.

In its petition plaintiff alleges the restriction against sub-dividing a lot was not intended to apply to a lot the size of Lot 61 and to enforce the restriction would be unreasonable, unfair and unjust. It also alleges certain of the building line restrictions should not be made applicable to Lots 61A, 61B and 61C but the set-back provision of the Iowa City zoning ordinance should be made applicable. Plaintiff and its purchasers concede they had full and complete knowledge of the restrictive covenants when they purchased.

I.  Plaintiff's case rests on the claim the restriction is unreasonable when applied to Lot 61, that the enforcement of it gives little or no benefit to defendants and is a great detriment to plaintiff, and before strict performance will be required it must affirmatively appear that this is necessary to effectuate the purpose, scheme or intent of the restrictions.

Plaintiff cites in support of its case, Grange v. Korff, 248 Iowa 118, 79 N.W.2d 743; Johnson v. Robertson, 156 Iowa 64, 135 N.W. 585, Ann. Cas. 1915B 137; Melson v. Ormsby, 169 Iowa 522, 151 N.W. 817; Welitoff v. Kohl, 105 N. J. Eq. 181, 147 A. 390, 66 A. L. R. 1317; Ludgate v. Somerville, 121 Ore. 643, 256 P. 1043, 54 A. L. R. 837; and 14 Am. Jur., Covenants, Conditions and Restrictions, section 338, pages 664, 665.

The language of plaintiff's claim is used in the cited cases. It bears analysis in the light of the restrictions in this case.

We have here restrictive covenants filed with the plat. They are applicable to each of the 61 lots. They appear in each abstract. The plan or scheme of the original proprietor is stated in clear and unmistakable language. The restriction under consideration is simply, "No residential lot shall be re-subdivided." All lots are residential lots. There is nothing in the restrictive covenants that in anyway indicates Lot 61 was not intended to be included in the same manner as all other lots.

It is urged restrictive covenants are not favored and are to be strictly construed. Such a rule obtains only where the wording of the restrictions is ambiguous. Jones v. Beiber, 251 Iowa 969, 103 N.W.2d 364; Wallace v. St. Clair, 127 S.E.2d 742, 750 (W. Va. 1962); and 26 C. J. S., Deeds, section 163, page 1102. The better view is stated in Brandon v. Price, 314

1034

S.W.2d 521, 523 (Ky. 1958), and quoted with approval in the more recent case of Macy v. Wormald, 329 S.W.2d 212, 214 (Ky. 1959):

■ " 'Under the modern view, building restrictions are regarded more as a protection to the property owner and the public rather than as a restriction on the use of property, and the old-time doctrine of strict construction no longer applies.' "

■ If the language of the restriction is given its plain ordinary meaning, it means a lot may not be subdivided. This restriction along with the others was used as an inducement to purchasers. When a purchaser buys and builds in reliance on the restrictions he acquires some rights and his land is also burdened. These restrictions run with the land for the period of their existence. Thodos v. Shirk, 248 Iowa 172, 179, 79 N.W.2d 733. Every owner in the addition "has a dominant estate over that of his neighbors, and the neighbors are dominant over his." Kajowski v. Null, 405 Pa. 589, 177 A.2d 101. Each owner has the right to enforce the covenants as written. Johnson v. Robertson, 156 Iowa 64, 81, 135 N.W. 585, Ann. Cas. 1915B 137; Burgess v. Magarian, 214 Iowa 694, 243 N.W. 356; Jones v. Beiber, 251 Iowa 969, 103 N.W.2d 364; Rick v. West, 34 Misc.2d 1002, 228 N. Y. S.2d 195; Wallace v. St. Clair, 127 S.E.2d 742 (W. Va. 1962); and Macy v. Wormald, 329 S.W.2d 212 (Ky. 1959). This is true as long as the circumstances remain the same. It is also true without regard to the action of the other owners, they may waive their own rights but not those of others.

■ II. Adverting to the claimed unreasonableness of the restrictions as applied to Lot 61, we find the original proprietor platted the entire triangular tract as one lot. It had the two-story house on it. The location of this house and the lot line restrictions he wished to impose could well have been the reasons he decided it was then large enough for only one house. Nothing has changed since that time except the lots have become more valuable. This restriction does not become unreasonable because it is now in the hands of an owner who purchased with full knowledge of the restrictions (it could not be heard to say otherwise, the restrictions are a matter of public record, section 558.55, Code of Iowa, 1962) and who can now make a profit by sub-

dividing the lot. The circumstances of the lot have not changed. An important consideration is the time limitation.

It should be pointed out that this case is not similar to Grange v. Korff, 248 Iowa 118, 79 N.W.2d 743, wherein we held a restriction that only one house could be erected on a suburban lot of 8.2 acres was unreasonable. There the development plan was found in deeds to several lots, advertising, use made of the lots, and zoning ordinance. Apparently there was no time limitation. In addition, the restriction was only an implied restriction and its enforcement was not necessary to maintain an orderly plan of such residential area, and no question of building lines was involved.

III. Actually the questions of benefit to the owner seeking enforcement and detriment to the owner seeking relief from the restriction and that it must affirmatively appear that strict enforcement is necessary to effectuate the purpose of the restriction are not reached until some change of circumstance or unreasonableness appears. These matters merely mean that an owner is not entitled to enforcement at all costs where the enforcement would be unconscionable or oppressive. The benefit to the enforcing owner in no event is more than maintaining the status quo. If the detriment to the owner seeking relief is no more than use of his property in the same manner as other owners under the restriction, it is not a detriment equity will relieve against. Mere loss of profit is not such a detriment. Likewise the showing that strict enforcement is necessary to effectuate the plan is sufficient when it appears that by giving the relief sought the other owners will be following one plan, that of the restrictions, and the one seeking relief will be following another. An examination of our cases, Jones v. Beiber, 251 Iowa 969, 103 N.W.2d 364; Thodos v. Shirk, 248 Iowa 172, 79 N.W.2d 733; Grange v. Korff, 248 Iowa 118, 79 N.W.2d 743; Burgess v. Magarian, 214 Iowa 694, 243 N.W. 356; Hegna v. Peters, 199 Iowa 259, 201 N.W. 803; and Johnson v. Robertson, 156 Iowa 64, 135 N.W. 585, Ann. Cas. 1915B 137, shows the applications of these principles.

IV. Plaintiff also contends the re-subdividing of Lot 7 should be considered. This violation was unknown to defend-

ants until the trial of this case. Even if they had acquiesced in it, which they did not, it is too slight to establish an abandonment of the right to enforce the covenant as written. Baker v. Smith, 242 Iowa 606, 47 N.W.2d 810; and Johnson v. Robertson, 156 Iowa 64, 135 N.W. 585, Ann. Cas. 1915B 137.

The decree of the trial court is—Affirmed.

All JUSTICES concur except LARSON, J., who takes no part, and HAYS, J., not sitting.