SEA–LAND SERVICE, INC., Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. R-63-287.     Decided November 17, 1964.

*Rodríguez Ema & Rodríguez Ramón, Rodolfo Sequeira,* and *Nicolás Jiménez* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Manuel Tirado Viera, Assistant Solicitor General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Clause (n) of § 291 of the Political Code, 13 L.P.R.A. § 551, provides an exemption from property taxes for "motor vehicles subject to payment of license fees (number plates) provided by the Automobile and Traffic Act, except those had in stock by natural or artificial persons who are dealers in motor vehicles."[1] Section 9 of Act No. 279 of April 5, 1946, 9 L.P.R.A. § 179,[2] included for the fiscal years 1961–62 and 1962–63, among those motor vehicles subject to the payment of fees, "trailer and trailer car designed to carry freight on its structure and be drawn by another motor vehicle."[3]

At the end of 1954 a new system for importing goods in non-self-propelled vans was begun in Puerto Rico using vans which, upon their arrival in Puerto Rico, were removed from the ships as a unit and drawn by self-propelled trucks, along with their cargo, to their destination or the consignee's place of business. The taxpayer, Sea-Land Service, Inc., was one of the companies engaged in this sea-freight transportation business. In its business the taxpayer used huge metal boxes known as "cargo containers" and "cargo vans" which were placed on the decks of the ships. Upon their arrival in Puerto Rico, the containers were unloaded and placed alongside the ship on metal platforms or chassis. Once this operation was done, the chassis were hauled by trucks which did not belong

---

[1] This clause was added to § 291 by Act No. 109 of April 26, 1949 (Sess. Laws, p. 264). The exemption regarding motor vehicles in stock by dealers was added by Act No. 151 of April 30, 1952 (Sess. Laws, p. 314).

[2] The Vehicle and Traffic Law, No. 141 of July 20, 1960, now in force (Sess. Laws, p. 408), did not change the classification and fees collected by the Treasury on motor vehicles.

[3] Act No. 6 of June 30, 1947 (Sp. Sess. Laws, p. 24), levied for the first time, license fees on trailers and established a table which varied according to the freight capacity and use of the trailers. With minor increases in fees the license requirements continued until approval of Act No. 65 of June 10, 1955 (Sess. Laws, p. 232), to which we shall refer hereinafter.

to appellant and were transported to the different addressees. After the imported goods were delivered and unloaded, the containers were reloaded for further shipment abroad.

The Secretary of the Treasury issued the taxpayer a personal property tax receipt for the fiscal year 1961–62 in the amount of $17,631.93. The taxpayer paid $583.29, the part of the tax with which the taxpayer was agreeable. For the next fiscal year 1962–63 the tax levied was $19,505.87, of which the taxpayer paid $626.55. The difference represented the tax on the assessed value of the metal containers in Puerto Rico on January first of each taxable year. The containers were valued at about $798,000.

Availing himself of the procedure provided in § 2A (3) (a) of Act No. 235 of May 10, 1949, 13 L.P.R.A. § 282, the taxpayer appealed to the Superior Court objecting to the tax levied on the containers. The main contention, now at issue, states that "the containers are not subject to property tax in Puerto Rico . . . (c) because the vans on which the personal-property tax is levied are, and constitute, integrated parts of, and form together with the chassis, a whole complete unit known as 'trailers,' and trailers are not subject to personal-property taxes." In his answer the Secretary contended that the tax was levied on the "cargo containers," and that the containers "do not become part of the chassis thus forming a trailer. On the contrary, the Secretary contends that the trailers[4] do not belong to the taxpayer. However, the 'cargo containers' which are separately owned items belong to the taxpayer."

The trial court determined that the metal chassis as well as the containers belong to the taxpayer, but that the trucks

---

[4] From the statement of admission of facts submitted by the Secretary to the taxpayer it is inferred that in the answer when referring to "trailer" it meant trucks. Request No. 4 states "That these trailers belong to entities not connected with the taxpayer which pay license fees as motor vehicles." The taxpayer admitted the truthfulness of these facts.

did not, and that the container is in no way adhered to, integrated with, or made a permanent part of, the chassis or the trucks. The trial court immediately stated, referring to an earlier decision, that "in *Pan Atlantic Steamship Co. v. Secretary of the Treasury*, case No. 60-2907, we decided that trailers were not subject to property tax because they were subject to license fees. It cannot be sustained that the cargo container is part of the trailer. The truck and the chassis are independent from the container." The complaints were dismissed. We decided to review the judgment.

As mentioned, the license fees prescribed by § 9 of the Automobile and Traffic Act,[5] until 1955, were as follows:

"For tractors and trailer cars using the public high-ways of Puerto Rico, for each ton of gross weight, a year     $   6.00
".   .   .   .   .   .   .   .

"For license for heavy motor vehicles, trailers, and commercial vehicles used in private service, having a load capacity of one (1) ton or less, a year    36.00

"For license for heavy motor vehicles, trailers, and commercial vehicles used in private service, having a load capacity of more than one (1) ton but not exceeding two (2) tons, a year    60.00

"For license for heavy motor vehicles, trailers, and commercial vehicles used in private service, having a capacity of more than two (2) tons, but not exceeding six (6) tons, a year    96.00

"For license for heavy motor vehicles, trailers, and commercial vehicles used in public service, having a load capacity of one (1) ton or less, a year    55.00

"For license for heavy motor vehicles, trailers, and commercial vehicles used in public service, having a load capacity of more than one (1) ton but not exceeding two (2) tons a year    77.00

---

[5] Similar wording continued, with the exemption of the amount of fees, after the amendments to § 9 by Act No. 227 of May 15, 1948 (Sess. Laws, p. 804), Act No. 116 of April 26, 1949 (Sess. Laws, p. 294) and Act No. 33 of March 20, 1951 (Sess. Laws, p. 72).

"For license for heavy motor vehicles, trailers, and commercial vehicles used in public service, having a load capacity of more than two (2) tons but not exceeding six (6) tons, a year                    110.00

"For each ton or fraction of a ton in excess of six (6) tons of the load capacity of heavy motor vehicles, trailers and commercial vehicles used in both private and public service, a year                    36.00"

Act No. 65 of June 10, 1955 (Sess. Laws, p. 232) provided a nominal one dollar fee "For a trailer and trailer car designed to carry freight on its structure and be drawn by another motor vehicle," and eliminated references to fees for trailers used in public or private service, which fees had varied according to *their freight capacity.*

Does this one dollar fee refer exclusively to chassis? Are chassis included when cargo-containers are attached, thus forming a trailer? The legislative intent is our best source of information for the solution of this problem.

The legislative history of H.B. 1404, later Act No. 65 of 1955, *supra*, is closely allied to H.B. 1389, later Act No. 59 of same date (Sess. Laws, p. 216). The report of the Treasury Commission of the House[6] on H.B. 1404 states in its pertinent part:

"This is a bill complementing H.B. No. 1389.

"The bill amends Art. 9 of the Automobile and Traffic Act to reduce to one dollar the annual fee in force for *trailers.* On the other hand, fees for truck tractors are increased by a graduated schedule.

"The intent of the bill is to place the weight of the license fees on self-propelled vehicles and to facilitate, for the benefit of consumers or industrialists in general, the use of *trailers* operating between the *mainland and the Island.*"

---

[6] Journal of Proceedings 1443 (1955). A similar report was rendered by the Treasury Commission to the Senate. Journal of Proceedings 2128 (1955).

And in connection with H.B. 1389, the same Committee indicated that:[7]

"The bill amends subsections 8 and 8A of section 16 of the Internal Revenue Act of Puerto Rico as follows:

"No. 1—Increases from 10% to 17% the tax on the 'sales price in Puerto Rico' on truck tractors designed to pull trailers or semi-trailers.

"No. 2—Eliminates the 15% tax now in force on the 'sales price in Puerto Rico' of trailers or semi-trailers.

"No. 3—These amendments are effective retroactive to November 1, 1954.

"The purpose of this bill is to facilitate a new and effective freight transportation service for bringing into and carrying out of Puerto Rico *trailers* loaded with goods for merchants and traders within and without Puerto Rico. These vehicles remain on the Island only for a few days, just the necessary period of time to unload and load articles imported and exported under this system. To compensate for the income lost from the elimination of trailer fees, the fees on truck tractors pulling the trailers were increased since these truck tractors are continuously used in Puerto Rico and, because of this service, offer more benefits to their owners.

"This Commission believes that the legislative measure shall bring sound results for our economy and recommends that the the bill be promptly enacted into law."

If there is any doubt that fees were levied not only on the chassis but also on the container placed on the chassis, the doubt disappears when the statements of Mr. Jorge Font Saldaña, Chairman of the Finance Committee, in his explanation of the reports and during the debate preceding the enactment of these measures are considered.[8] When he referred to trailers, he always had in mind that they included the containers. As examples, consider the following state-

---

[7] Journal of Proceedings 1437 (1955).

[8] The debate, in general, was mainly limited to the aspect of the convenience of the proposed legislation which would unquestionably cause the inevitable displacement of port workers against the general benefit of the community, the consumers in particular, by the lower cost of food resulting from cheaper transportation.

ments on p. 1439: "I wish to remind our fellow member that this situation is confronted by two bills. One in connection with the excise taxes, the other referring *to the fees levied by the Public Works Department.*" He added: "For example, trailers brought into Puerto Rico during '52, '53 and '54, paid excise taxes in the amount of $52,118.21." And more clearly "naturally, there was a system to tax trucks, that is, the apparatus pulling the motor and the containers, until the new techniques separated them. The system separated the container from the motor in order to increase efficiency by making delivery faster and easier. Then the prior fiscal system of taxing the containers as if they were motors was followed . . . ." (p. 2065). Representative Westerband, contesting the approval of H.B. 1404, examined the payment of fees as follows:[9] "And a one dollar annual fee shall be paid by 'trailers' now compelled to pay more than eight hundred dollars." It is difficult to believe that he only referred to the chassis, necessarily the payment required also covers the containers or vans placed on the chassis.

As may be seen from this historical review, the basic purpose of the Legislature was to aid this new sea transportation system—of great importance to an island depending almost exclusively on ocean shipments for its foreign trade—to help the consumer derive the benefit of reduced costs of transportation. The fact that these vehicles only remain on the Island for a few days is expressly mentioned in H.B. 1389, this can only refer to the containers, since the chassis are permanently in Puerto Rico. So we have seen that the trailers, including the chassis and the container or van, was always in mind.

■ The most recent definitions of "trailer"—or trailer car—fully corroborates that the essential characteristics of

---

[9] Journal of Proceedings 2061 (1955).

such a vehicle are: (a) it is not a self-propelled vehicle, and (b) its purpose is to carry freight. *Safeguard Insurance Co.* v. *Justice*, 128 S.E.2d 286 (Va. 1962); *Haden* v. *Lee's Mobile Homes, Inc.*, 136 So.2d 912 (Ala. 1961); *Jones* v. *Beiber*, 103 N.W.2d 364 (Iowa 1960). See, also, Black, Law Dictionary 1667 (4th ed.).

■ Therefore, we conclude that the fact that the metal container is detachable from, or is not permanently attached to the chassis, is not important for purposes of determining whether the containers are exempt from the payment of property taxes. As a matter of fact, they are an integrated part of the trailer or trailer car subject to the payment of license fees under the Automobile and Traffic Act. This was the legislative intent.

The judgment rendered by the Superior Court, San Juan Part, on November 7, 1963, shall be reversed.