Ivan Gary **LEVERTON** and Marjorie N. Leverton, Appellees,

v.

Larry L. **LAIRD** and Charlotte L. Laird, Appellants.

No. 54369.

Supreme Court of Iowa.

Sept. 17, 1971.

Mosier, Thomas, Beatty, Dutton & Braun, Waterloo, for appellants.

Swisher & Cohrt, Waterloo, for appellees.

BECKER, Justice.

The land in question is a vacated street in the city of Waterloo, Iowa. The street was formed by the filing of two separate plats in 1948 (Hilltop Place) and 1950 (Holmes Addition) respectively. The plats subdivided contiguous properties in such manner as to allow 30 feet from each plat to make up the full sixty-foot width of Meadow Lane. The dedication of the two subdivisions contains numerous restrictions

which are so similar that restrictions referred to herein will be considered to appear in both dedications unless otherwise noted.

The plat provided with the abstract shows the location of the disputed property. The shaded area in question was vacated by the city of Waterloo.

Entry #1

[A4444]

Holmes Addition lies immediately south of Hilltop Addition. Lot 1 of Holmes Addition adjoins the now vacated portion of Meadow Lane and is owned by plaintiffs herein. The vacated portion of Meadow Lane is now owned by defendants.

Dedication of each of the two subdivisions contained the following clauses:

"1. No lot in said Addition shall be used for any other than residential purposes. No building shall be erected on any of the said lots other than one one-family dwelling house, not exceeding two stories in height, and a private garage. All buildings shall be of new construction.

"2. (Implements building line restrictions and rear yard restrictions.)

"3. All dwelling houses in the addition shall conform to the following minimum ground floor square foot area requirements: (a) One-story houses, 1200 square feet, and (b) two-story houses, 800 square feet.

"4. (Restriction against use of trailers, tents, basements, et cetera for living quarters.)

"5. No lot in said Addition shall be split, divided, or subdivided, except for the purpose of providing land in addition to and entire platted lot for use in connection with one dwelling house. Not more than one dwelling house may be erected or maintained on any one lot, as hereby platted.

"6. (Requires compliance with Building Code.) (Holmes Addition dedication places restrictions on types of trees in street area.)

"7. (Grants utility easements).

"8. (Enforcement provision).

"9. Each of the undersigned and all persons and corporations hereafter acquiring any right, title or interest in any of the lots in said Addition shall be taken and held to have agreed * * * to conform to and observe all of the foregoing covenants, #11 * * * as to the use, improvement and occupancy of the lots in the Addition, and as to the construction of buildings thereon, for a period of twenty-five years from the date of the filing of said plat * * *."

On July 7, 1964 the city counsel passed the following ordinance:

"Be it Ordained by the Council of the City of Waterloo, Iowa, as follows:

"1. That the portion of Meadow Lane St. lying adjacent to and between Lot No. 7 in Hilltop Place Addition to the City of Waterloo, Iowa, and Lot No. 1 in Holmes Addition in the City of Waterloo, Iowa, be, and the same is hereby vacated.

"2. That said premises so vacated are hereby sold to Gertrude M. Small for the sum of $1,000.00 * * *, subject to the provisions that no dwelling shall ever be placed or erected upon said premises.

"3. * * *."

Subsequently the city deeded the vacated street to Gertrude M. Small, owner of contiguous Lot 7 in Hilltop Place Addition, by a quitclaim deed which contained the restriction noted in paragraph 2 of the ordinance. In 1964, Small deeded to Orrin W. Hall, Jr., et ux, with the same restriction. On June 17, 1968, the Smalls, as husband and wife attempted to release the restriction contained in their deed to the Halls. Similarly, on November 12, 1968, the City of Waterloo by resolution attempted to remove the restriction against building on the vacated street. The Halls deeded the property to Mr. and Mrs. Laird, defendants herein, on June 21, 1968. The Lairds sold Lot 7 on August 8, 1969 and commenced preparations for building a house on the vacated street.

On August 12, 1969 plaintiffs notified defendants that any use of the vacated street "in any manner which violates the terms of the vacation thereof" would be resisted "even to the extent of bringing suit in the district court." Defendants proceeded to commence construction and had made considerable progress with the basement when this action halted further progress about the middle of October, 1969.

The trial court found the language in the two plat dedications created an implied restrictive covenant against erection of a building on a vacated street in the addition. Defendants cite this action as a basis for reversal and add that even if such restriction were created by implication the restriction would be illegal and void. Defendants also contend trial court erred in finding the equities were with plaintiffs.

Two other issues, i. e., whether the city could restrict use in the manner it first attempted and whether it could remove such restriction at a later date, need not be here decided in light of our disposition of the other three issues.

I. Do the restrictions set forth in the dedication of the two subdivisions apply by necessary implication to the vacated street? In this review de novo we hold they do. The trial court's decision was right.

The rules governing construction of instruments containing implied covenants in connection with real estate must be reviewed. In Stockdale v. Lester, 158 N.W.2d 20, 22 (Iowa 1968), we said:

"Innumerable precedents hold restrictions on the free use of property are strictly construed against the party seeking to enforce them, they will not be extended by implication or construction beyond the clear and unambiguous meaning of their terms and doubts will be resolved in favor of the unrestricted use of property. (cases cited). * * *.

"Application of this strict rule of construction will not be allowed to subvert the manifest intention as shown by the entire instrument in which the covenant appears. Proper regard for the contemplated purpose of the parties must be had; the words used must be given their ordinary and obvious meaning as commonly understood, unless they have acquired a peculiar meaning in the particular relation in which they appear, or unless it clearly appears from the context it was intended to use them in a different sense. (cases cited)."

While it would appear from the first paragraph of the above quotation that implied covenants are entirely prohibited, the last paragraph recognizes intention of the parties as the determinative force. The latter principle is strengthened by the more liberal approach to construction of covenants found in other recent Iowa cases.

In Beeler Development Co. v. Dickens, 254 Iowa 1029, 1033, 1034, 120 N.W.2d 414, 416 (1963), we refused to be bound by the strictness of construction heretofore insisted on in some cases:

"* * * The better view is stated in Brandon v. Price, 314 S.W.2d 521, 523 (Ky.1958), and quoted with approval in the more recent case of Macy v. Wormald, 329 S.W.2d 212, 214 (Ky.1959):

"'Under the modern view, building restrictions are regarded more as a protection to the property owner and the public rather than as a restriction on the use of property, and the old-time doctrine of strict construction no longer applies.'"

A like move to regard restrictive covenants with greater favor is found in Thodos v. Shirk, 248 Iowa 172, 180, 79 N.W.2d 733, 738 (1956):

"* * * Some cases cited by appellants tend to support the view that there is a presumption against the running of the benefit upon the argument that the policy of the law is against the imposing of restrictions of unlimited duration upon land for the benefit of other land, since such restrictions tend to impair

alienability. See Mathews Real Estate Co. v. National Printing & Engraving Co., 330 Mo. 190, 48 S.W.2d 911, 81 A.L.R. 1039; Stevenson v. Spivey, supra [132 Va. 115, 110 S.E. 367]. But this argument is more than answered when we consider that the real purpose of equitable servitudes relating to building restrictions is the protection of property values in the subdivision so as to increase the desirability of these lots as residences through the existence of such restrictions. 26 C.J.S. Deeds §§ 163, 164.

"From the many cases we believe the true rule is that the intention of the parties may be ascertained from the language of the instrument or may be implied from the surrounding circumstances. (cases cited)."

Defendant cites 21 C.J.S. Covenants § 9, p. 888, as the general rule regarding implied covenants:

"* * * An implied covenant must rest on a satisfactory basis in the express contract of the parties, and it must appear that it was so clearly in their contemplation that they deemed it unnecessary to express it and, therefore, omitted to do so, or it must appear that it.is necessary to imply such a covenant in order to give effect to and effectuate the purpose of the contract as a whole."

The trial court found the restriction "one house to a lot" necessarily implies that no house shall be constructed except on the lots. When the entire dedication and plat are examined together we are constrained to agree.

▊ The filing of restrictive covenants with subdivision plats is a common practice designed to protect all of the property in the subdivision. When relatively large lots are laid out and precaution is taken to restrict building to no more than one house per lot, the clear intent of the subdivider is to provide uniformly large lots for the mutual protection of each owner. In this case 38 of the 40 lots in the

two subdivisions have frontages of 100 feet or more. The two exceptions are 90 feet in width. Clearly the restrictions are designed to prevent building on plats smaller than 90 to 100 feet.

Vacation of a 60-foot street creates a parcel which is only two thirds or less the size of the others lots in the subdivision. On this 60-foot parcel defendant proposes to place a home which will take up 50 feet of the frontage, leaving a 5-foot yard on each side. This is the very situation the platting was designed to prevent.

Jones v. Haines, Hodges & Jones Bldg. & Develop. Co., 371 S.W.2d 342, 344 (Mo. App.1963), presents an analogous situation but the restriction in that case is somewhat better worded. In deciding the case the Missouri Court of Appeals said:

"The principle that restrictions as to the use of real estate should be strictly construed and doubts resolved in favor of the free use of property should never be applied in such a way as to defeat the plain and obvious purpose of the restriction. * * *."

The City of Waterloo recognized this when it placed a restriction in its deed to Mrs. Small. The Smalls continued the recognition when they deeded Lot 7 and the vacated street to the Halls. The Halls sold both parcels to defendants. They sold Lot 7 and were left with an undersized lot for a house—if they could get by the restrictions. The Smalls quitclaimed a release of the deed restriction to the Halls on the same date that the deed from Halls to defendant was filed. The city was later prevailed upon to release its prior restriction. Enough has been said to show we regard this plan as a clear violation of the plain intent of the original restrictions.

▊ II. We need not determine whether the Smalls and the city could effectively release the restrictions placed in their original deeds. Except as to the releasing parties themselves, the releases could not af-

fect the rights created by the dedication. Beeler Development Co. v. Dickens, 254 Iowa 1029, 120 N.W.2d 414, 417 (1963) states:

"If the language of the restriction is given its plain ordinary meaning, it means a lot may not be subdivided. This restriction along with the others was used as an inducement to purchasers. When a purchaser buys and builds in reliance on the restrictions he acquires some rights and his land is also burdened. These restrictions run with the land for the period of their existence. Thodos v. Shirk, 248 Iowa 172, 179, 79 N.W.2d 733. Every owner in the addition has a dominant estate over that of his neighbors, and the neighbors are dominant over his. Kajowski v. Null, 405 Pa. 589, 177 A.2d 101. Each owner has the right to enforce the covenants as written. Johnson v. Robertson, 156 Iowa 64, 81, 135 N.W. 585; Burgess v. Magarian, 214 Iowa 694, 243 N.W. 356; Jones v. Beiber, 251 Iowa 969, 103 N.W.2d 364; Rick v. West [34 Misc.2d 1002] 228 N.Y.S.2d 195; Wallace v. St. Clair, [147 W.Va. 377], 127 S.E.2d 742 (1962); and Macy v. Wormald, 329 S.W.2d 212 (Ky. 1959). This is true so long as the circumstances remain the same. *It is also true without regard to the action of the other owners, they may waive their own rights but not those of others.*" (Emphasis supplied).

Thodos v. Shirk, 248 Iowa 172, 182, 79 N.W.2d 733, 739 (1956), states:

"* * * Such covenants running with the land are subject to discharge at law by (1) merger of the lands benefited and burdened; (2) duly executed release; and (3) a new covenant operating as a release or modification of the original. These manners of discharge are also recognized in equity, but in addition thereto we find additional types of discharge, i. e., abandonment, and the personal defenses of acquiescence, laches and estoppel, and another in the nature of a bar,

referred to as such a change in the character of the neighborhood as to defeat the purpose of the original restriction and make equity interference to enforce such restriction both unjust and futile. See 5 Restatement of Property (1944), section 558; 16 Michigan L.Rev. 90—105; 31 Harvard L.Rev. 876; 3 Tiffany on Real Property, 3 Ed., 1939, section 875, page 522."

■ III. Defendants' second proposition amounts to this. Since the city vacated the street as empowered by section 368.39, Code, 1971, it owned the plat free of restrictions. The city acquires fee simple title of land dedicated for street use. Code, 1971, § 409.13; Kelroy v. City of Clear Lake, 232 Iowa 161, 5 N.W.2d 12, 16 (1942). But when land is dedicated with limitations on the dedication and the city accepts the plat as dedicated, such action is not void and the limitations have been recognized.

Jochimsen v. Johnson, 173 Iowa 553, 561, 562, 156 N.W. 21, 24 (1916), we said:

"* * * See City of Dubuque v. Benson, 23 Iowa 248. In that case it was held that, where a strip of land is dedicated for a street or alley, and for that purpose only, notwithstanding the provision of the statute that the acknowledgment and recording of a town plat should operate as a conveyance in fee for the use of the public, the city takes only an easement in the street and the right to work them as a public highway."

Louden v. Starr, 171 Iowa 528, 539, 154 N.W. 331, 334 (1915) states:

"* * * 'It is well settled that, though the city has the power to vacate its streets and alleys, this power may not be exercised arbitrarily and in disregard of the trust for the use of the public' citing 2 Elliott on Roads and Streets, § 1182, in which it is said: 'Whether it is expedient to discontinue a highway is a question for legislative decision, and when the authority to discontinue is dele-

gated to local officers, and no restrictions are placed upon its exercise, the officers are vested with a very broad discretion, and unless this discretion has been abused, the courts cannot interfere.' "

In Carson v. State, 240 Iowa 1178, 1189, 38 N.W.2d 168, 175 (1949) we considered a city's power to convey land already publicly owned. Although there are distinctions to be made the holding is apropos:

" * * * we hold that where land, already publicly owned, is designated for some particular public use no contractual trust arises in favor of the general public that precludes subsequent diversion of it by proper legislative authority to some other and different public use; *at least, where no special private rights have in the meantime arisen by purchase or improvement of adjacent property in reliance on the permanency of the public use in question.*" (Emphasis supplied). Cf. 6 McQuillin, Municipal Corporations (1969 Rev.Vol.) § 21.06, p. 202.

Here each lot owner is presumed to have bought with notice of and in reliance on the material in the plat dedication. Private rights have arisen. The restrictions survive public ownership by the city and are applicable to its grantees. The city paid nothing for the street in the first place. Having determined the street is not needed it may dispose of it. But in doing so it should not be allowed to destroy the original scheme of restrictive covenants applicable to all of the other land.

■ IV. Finally defendants contend the court erred in finding the equities are with plaintiffs. We agree with the trial court.

Defendants knew the restrictions were in the dedication and also knew of the prior position of Mrs. Small and the city. They were also clearly warned that plaintiffs would fight the matter in court if there was an attempt to build on the undersized parcel.

Defendants' reliance on section 368.40, Code, 1971, is misplaced. Even if we were to hold that the 1968 attempted release of the restriction in the 1964 city deed was a "disposal of property", which we do not, the case in fact turns on rights created in the dedication and is not controlled by the city's later attempted nullification of the restriction.

Declaratory judgment action was available to settle the parties' rights. However, defendants elected to go ahead with their building despite plaintiffs' protest. Plaintiffs' action in equity was reasonably prompt thereafter.

Affirmed.

All Justices concur.